In the Matter of DOLORES M. SIMPSON, Respondent, v. DANIEL KING et al., Constituting the Zoning Board of Appeals of the Town of Harrison, et al., Appellants; GUNTHER KNOEPFLER, Intervenor-Respondent-Appellant.— In a proceeding to article 78 of the CPLR to review a determination of appellant Zoning Board of Appeals of the Town of Harrison, dated January 7, 1974, denying petitioner's application for an area variance, the appeals are from a judgment of the Supreme Court, Westchester County, dated April 9, 1974, which (1) annulled the determination and (2) directed that the variance be granted

and that a building permit be issued in accordance with the variance. Judgment reversed, on the law, without costs, petition dismissed, on the merits, and determination confirmed. Petitioner, a resident of the State of Florida, is the widow of Eliot Simpson (Eliot). On September 30, 1953, Eliot purchased an improved parcel of land known as Block 691, Lot 66, on the Tax Assessment Map of the Town of Harrison. On May 3, 1954 he purchased the adjacent unimproved land, Lot 64. Simultaneously with the purchase of Lot 64, Eliot sold the most westerly 10-foot strip of land in that lot to the owner of Lot 63, which lot was immediately adjacent to and west of Lot 64. When he sold off that 10-foot strip, Eliot applied for an apportionment of that lot. He was informed by Harrison's assessor that Lot 64 could not be so apportioned since such an apportionment would create two nonconforming lots. In order to proceed with the sale of the above-mentioned westerly 10-foot strip, Eliot arranged to have the remaining portion of Lot 64, which had a frontage of approximately 90 feet, merged with and become part of Lot 66 on Harrison's tax assessment map. It has remained so merged. The 10-foot strip sold to the owner of Lot 63 merged with that lot. Petitioner inherited Lot 66 (which included the remaining merged 90-foot frontage portion of Lot 64) from Eliot upon his death in August, 1960. On February 5, 1965 petitioner, for valuable consideration, conveyed all of her interest in Lot 66 (excluding that part which had been former Lot 64) to Herbert Simpson, Eliot's father, thus dividing the enlarged Lot 66 and retaining, as a separate entity, what previously had been part of Lot 64. The land thus retained did not then, in February, 1965, meet the frontage or area requirements then existing in Harrison for the construction thereon of a one-family residence; nor did it meet such requirements existing when the subject variance was sought. On June 15, 1973, petitioner applied for the variance, to permit construction of such a residence on the nonconforming Lot 64. The foregoing facts, found by the zoning board, are supported by substantial evidence adduced at the hearings held before that board. Based thereon and upon other evidence, the board determined that the nonconformity of Lot 64 had been self-created by petitioner's immediate predecessor in interest and that the circumstances of the case did not warrant the granting of the frontage and area variance sought. That determination is supported by the evidence adduced at the hearings and by pertinent authority (see *Contino* v. *Incorporated Vil. of Hempstead*, 27 N Y 2d 701; *Matter of 113 Hillside Ave. Corp.* v. *Zaino*, 27 N Y 2d 258, 261, 262; *Matter of Overhill Bldg. Co.* v. *Delaney*, 28 N Y 2d 449, 454–455; *Matter of Chasanoff* v. *Silberstein*, 6 A D 2d 872, affd. 6 N Y 2d 807; *Matter of Volett* v. *Schoepflim*, 28 A D 2d 796). Moreover, the record indicates that petitioner's title to the subject substandard lot was procured as a result of an inadvertence in her conveyance in February, 1965 to her then father-in-law, Herbert Simpson. Evidence adduced at the hearings indicated that she had intended to convey to him all of her right, title and interest in both Lot 66 and substandard Lot 64, which had been merged on Harrison's tax assessment rolls since 1954. However, the deed failed to include this part of former Lot 64 and thus, without her knowledge, she inadvertently reserved the latter parcel. Thereafter, in February, 1972, Herbert Simpson's executor conveyed Lot 66, with the improvement thereon, to Mr. Knoepfler, the intervenor-respondent-appellant. There is substantial evidence that Knoepfler believed that the conveyance to him included adjacent substandard Lot 64. At all times since February, 1965, when petitioner conveyed Lot 66 to her father-in-law, up to about August, 1972, when Knoepfler discovered that she still was the record owner of substandard Lot 64, all taxes on both of the above lots as merged

real estate were paid successively by her father-in-law, his executor and Mr. Knoepfler. When petitioner learned from Knoepfler's attorney that she was the record owner of substandard Lot 64 and that Knoepfler was interested in purchasing it from her, she sought the subject variance so that she could sell Lot 64 pursuant to a contract of sale conditioned on her procuring the variance. Thus the record indicates that, in actuality, petitioner's present ownership of Lot 64 is in the nature of a windfall. It is questionable whether she has truly suffered any economic hardship or practical difficulty in its ownership. A granting of the variance would, in effect, increase her profit as a result of a mistake in a conveyance. That factor, added to the other facts above discussed, indicates not only that the determination of the zoning board was not arbitrary and capricious, but that it was an equitable determination. Special Term erred in annulling the board's determination and substituting its judgment for that of the board. In *Matter of Sarant* v. *Zoning Bd. of Appeals of Town of Oyster Bay* (39 A D 2d 711) and *Matter of Village of Bronxville* v. *Francis* (1 A D 2d 236, affd. 1 N Y 2d 839), both relied upon by Special Term herein, the annulment by Special Term of the zoning boards' determinations of variance applications, and substitutions by Special Term of its respective judgments, were reversed on appeal and the zoning board's determinations were reinstated and confirmed. Martuscello, Acting P. J., Latham and Shapiro, JJ., concur; Benjamin and Munder, JJ., dissent and vote to affirm the judgment, with the following memorandum: We have no quarrel with the general proposition that a self-created hardship resulting from a subdividing of land to create one or more substandard plots, which is not relieved by an administrative grant of a variance, should not be relieved by the courts (see *Contino* v. *Incorporated Vil. of Hempstead,* 27 N Y 2d 701; *Matter of 113 Hillside Ave. Corp.* v. *Zaino,* 27 N Y 2d 258). But the rule is not without exception (see *Matter of Fulling* v. *Palumbo,* 21 N Y 2d 30). There must be some legitimate public purpose served in adhering to the standard and denying the variance. Generally, the public purposes of area restrictions relate to public health, safety and welfare, viz., to limit population, to ease the burden of municipal services and to preserve the character of a particular area. It is difficult to perceive how any public purpose is served by the denial of the variance in this case. The creation of the substandard condition was the result of the act of petitioner's husband when he bought the unimproved lot (Lot 64) some 20 years ago. At that time, and in order to eliminate a "blind spot" in the driveway to the street on the adjoining lot (Lot 63) he sold and conveyed the 10-foot wide strip to his neighbor. He had remaining a lot with a frontage of 94.33 feet and an area of .4775 of an acre, in a district that requires a 100-foot frontage and a half-acre area. He maintained that lot with Lot 66, on which his home existed, until he died in 1960. In 1965 his widow, petitioner, conveyed Lot 66 to her father-in-law in satisfaction of a mortgage he held against that residence lot. She continued to occupy the house until her father-in-law's death in 1971. In February, 1972 the intervenor-respondent-appellant purchased the residence lot (Lot 66) from the father-in-law's estate, but title to the unimproved lot (Lot 64) remained in petitioner at all times. Now, because of her husband's good-neighborly act in adding a 10-foot frontage to his neighbor's conforming plot in order to improve its use, she is being denied the use of the remaining plot, which is ever so slightly substandard. We do not believe zoning regulations are to be so rigidly construed — particularly when no legitimate public purpose will be served. The condition was not the result of a deliberate act to create two substandard plots in utter disregard of the ordinance. The record shows that

petitioner and 'her husband were always conscious of maintaining the quality of the area. The variance should have been granted (*Matter of Fulling* v. *Palumbo*, 21 N Y 2d 30, *supra*). Its denial was arbitrary.