In the Matter of DOUGLASTON CIVIC ASSOCIATION, INC., et al., Appellants, v JOSEPH B. KLEIN et al., Constituting the Board of Standards and Appeals of the City of New York, Respondents; SAMUEL MINDEL, Intervenor-Respondent.

Second Department, March 19, 1979

**APPEARANCES OF COUNSEL**

*Julius Feigenbaum* for appellants.

*Allen G. Schwartz, Corporation Counsel (Maureen F. Brennan* and *L. Kevin Sheridan* of counsel), for respondents.

*McGee & Morsellino (Joseph P. Morsellino* of counsel), for intervenor-respondent.

**OPINION OF THE COURT**

SHAPIRO, J.

In this CPLR article 78 proceeding to review a determination of the Board of Standards and Appeals of the City of New York, the petitioners appeal from a judgment of the Supreme Court, Queens County (FINZ, J.), dated May 17, 1977, which sustained the granting of a variance by the board to the intervenor-respondent (Samuel Mindel). We affirm.

On August 11, 1971 Mindel purchased the subject property. It is located on the south side of Northern Boulevard in Douglaston, Queens, between 232nd and 233rd Streets (both streets not laid out). It is an undeveloped plot set back from Northern Boulevard—72 feet on the east and about 110 feet on the west. The plot runs 200 feet parallel with Northern Boulevard and has a depth of 300 feet on the westerly side and 402 feet on the easterly side. The property lies generally at the southern end of Little Neck Bay and the northern end of Alley Pond Extension. Northern Boulevard, in this area, is

lined on both sides by commercial enterprises consisting of gas stations, a golf driving range, a diner, fast food outlets and other businesses.

On November 24, 1975 Mindel applied to the Department of Buildings for approval of plans to construct a one-story tennis facility with a parking area. The application was disapproved because use of the property as a tennis facility was not permitted in an R1-2 zone (one-family detached) under section 22-10 of the Zoning Resolution of the City of New York. Mindel then appealed to the Board of Standards and Appeals (board) for a variance to permit the construction of a one-story building to house eight tennis courts and a parking area adjacent to the building.

On April 9, 1976 Community Planning Board 11 notified the board of its opposition to the granting of a variance. In addition, at the hearings held by the board, various civic associations and other organizations and citizens objected to the requested variance. It was brought out that more than $800,000 had been expended by the city for the development of the adjacent Alley Pond Park and for the preservation of the wetlands. The nature of the opposition is sufficiently characterized in a letter from the then chairman of the City Planning Commission who wrote: "Alley Park, when developed, is conceived of as a major natural habitat of a unique ecological character * * * The community has expressed the hope of extending the existing boundaries of Alley Park, to include the surrounding vacant lands, including the instant site. We raise these facts to underscore the need to avoid any development of a nature that would conflict with the overall planning of this area and of adjacent Alley Park. The proposal before the Board clearly conflicts with the City's current planning program in the area."

Mindel, on the other hand, introduced reports by real estate appraisers to the effect that the swampy nature of the property required the sinking of numerous pilings prior to construction of any residential buildings. He pointed out that, according to the appraisal reports, a complying residential use of the subject property would contain five one-family residences on lots of 60 feet by 100 feet and six one-family residences on lots of 67 feet by 100 feet. The costs of such residences would be: $52,800 for construction of the home; $8,000 for construction of the basement; $1,000 for landscaping, sewer connection, etc.; $3,000 for the necessary pilings;

and $8 per square foot for the value of the land. Thus, the total cost would be $112,800 for the smaller lots and $118,400 for the larger lots.

Moreover, the maximum sales potential for the one-family residences, which would be located in an isolated area adjacent to commercial property, would only be $30,000 to $35,000. Thus, in view of the relatively low expectation of return on the homes, the cost of construction would be prohibitive. Accordingly, Mindel argued that the granting of a variance was necessary to enable him to realize a reasonable return. By a resolution dated July 27, 1976, the board granted the variance. The resolution provides:

"WHEREAS, the decision of the Borough Superintendent, dated November 24, 1976 * * * reads: '1. Proposed construction of physical culture establishment (indoor tennis center). Use Group 9, is not permitted as a right in an R1-2 zoning district, as per Section 22-10 of the Zoning Resolution.' and

"WHEREAS, the premises and surrounding area were inspected by a committee of the Board; and

"WHEREAS, the Board has determined that the evidence in the record supports the findings required to be made under Section 72-21 of the Zoning Resolution, and that the applicant is therefore entitled to relief on the grounds of practical difficulty and/or unnecessary hardship.

"Resolved, that the Board of Standards and Appeals does hereby make each and every one of the required findings and grants a variation in the application of the Zoning Resolution, and that the application be and it hereby is granted under Section 72-21 of the Zoning Resolution, to permit in a R1-2 district, the erection of a one story building for use as an indoor tennis center on condition that all work shall substantially conform to drawings filed with this application * * * and on further condition that this variance shall be limited to a term of 15 years, and that all laws, rules and regulations applicable be complied with, and that substantial construction be completed within one year from the date of this resolution."

Petitioners then commenced this CPLR article 78 proceeding seeking to set aside the determination of the board on the grounds that the granting of the variance was arbitrary and capricious and in violation of section 72-21 of the Zoning Resolution.

Special Term, in upholding the board's determination, found that each of the criteria imposed by section 72-21 of the Zoning Resolution had been met and it therefore rejected the contention advanced by the appellants that the board had exceeded its statutory mandate in granting the variance.

On this appeal appellants again contend, as they did at Special Term, that the board exceeded its authority and arrogated to itself the legislative function of the Board of Estimate and the City Planning Commission by rezoning the area under the guise of a variance. In addition, appellants maintain that the board was not justified in making any of the findings required under section 72-21 of the Zoning Resolution. They submit that Mindel failed to establish that the return for the property would not be reasonable for each and every permitted use. They point out that pursuant to subdivision (d) of section 72-21 of the Zoning Resolution, none of the other required findings can properly be made to relieve Mindel from the self-inflicted hardship of purchasing the land with knowledge of the R1-2 zoning. Moreover, they contend that the variance granted is not the minimum variance mandated under subdivision (e) of section 72-21.

The respondent board, on the other hand, argues that it has made every one of the required findings under section 72-21. Thus, it maintains that the property has unique physical conditions; that it cannot bring a reasonable rate of return as presently zoned; that rezoning would not alter the essential character of the neighborhood; that the hardship complained of is inherent in the land and was not self-created and that the variance granted was the minimum necessary to afford appropriate relief.

In the landmark case of *Matter of Otto v Steinhilber* (282 NY 71, 76) the Court of Appeals set forth the circumstances which justify the granting of a variance on the ground of unnecessary hardship saying: "Before the Board may exercise its discretion and grant a variance upon the ground of unnecessary hardship, the record must show that (1) the land in question cannot yield a reasonable return if used only for a purpose allowed in that zone; (2) that the plight of the owner is due to unique circumstances and not to the general conditions in the neighborhood which may reflect the unreasonableness of the zoning ordinance itself; and (3) that the use to be authorized by the variance will not alter the essential charac-

ter of the locality. (Bassett [Bassett on Zoning (1937)] *op. cit. supra,* pp. 168, 169.)"

While the Zoning Resolution of the City of New York has retained the basic requirement that its zoning regulations may be varied only in cases of practical difficulty or unnecessary hardship, the elements of these terms have been more precisely defined than is common in municipal zoning ordinances generally or in the cases (see 2 Anderson, New York Zoning Law and Practice [2d ed], § 18.08). Thus, under the provisions of section 72-21 of the Zoning Resolution, the Board of Standards and Appeals may only grant a variance when it can properly make the following findings:

"(a) That there are unique physical conditions, including irregularity, narrowness or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to and inherent in the particular zoning lot; and that, as a result of such unique physical conditions, practical difficulties or unnecessary hardship arise in complying strictly with the use or bulk provisions of the resolution; and that the alleged practical difficulties or unnecessary hardship are not due to circumstances created generally by the strict application of such provisions in the neighborhood or district in which the zoning lot is located.

"(b) That because of such physical conditions, there is no reasonable possibility that the development of the zoning lot in strict conformity with the provisions of this resolution will bring a reasonable return,. and that the grant of a variance is therefore necessary to enable the owner to realize a reasonable return from such zoning lot.

"(c) That the variance, if granted, will not alter the essential character of the neighborhood or district in which the zoning lot is located; will not substantially impair the appropriate use or development of adjacent property; and will not be detrimental to the public welfare.

"(d) That the practical difficulties or unnecessary hardship claimed as a ground for a variance have not been created by the owner or by a predecessor in title. Where all other required findings are made, the purchase of a zoning lot subject to the restrictions sought to be varied shall not itself constitute a self-created hardship.

"(e) That within the intent and purposes of this resolution the variance, if granted, is the minimum variance necessary

to afford relief; and to this end, the Board may permit a lesser variance than that applied for."

In my opinion, the board's findings met the criteria of the Zoning Resolution.

In *Stanley Park, Inc. v Donovan* (34 AD2d 690, later app 38 AD2d 861, affd 32 NY2d 668), the petitioner was denied a variance for a restaurant and a free-standing sign. In reversing, this court said (p 862): "In our opinion the 'dollars and cents' evidence elicited by petitioner on the rehearing, together with the inferences reasonably to be drawn therefrom and from the other evidence, established that the subject premises cannot yield any reasonable return if used only for the purposes allowed within the zone in which it is located. In these circumstances respondents' denial of petitioner's application for a use variance was arbitrary, capricious and an abuse of discretion."

In our case the appraisers' reports show that the nature of the soil would necessitate extremely high construction costs for residences and that such costs would not permit the owner to obtain a fair return on his investment. The board had a right to credit those reports, buttressed, as they were, by a personal inspection of the property "by a committee of the Board". In addition, the board properly considered the heavy traffic conditions on Northern Boulevard which reduce the site's value as residential land (see 67 NY Jur, Zoning and Planning Laws, § 296). Thus, the board could properly find, as it did, that criteria (a) and (b) of the zoning ordinance were met.

Next, on the record before it and under the requirements of subdivision (c), the board could properly have determined, as it did, that the variance would not alter the essential character of the neighborhood nor substantially impair the development of adjacent property. In this connection the board had a right to consider that Northern Boulevard, in the immediate vicinity, is lined with commercial establishments and that the construction of a tennis facility would be more in keeping with the proposed development of the adjacent land as a park and more desirable 'than a tract full of homes. The record makes it obvious that the various groups which opposed the variance, including the appellants, were not against the construction of a tennis facility per se, but were against *any* development of the subject property. Even if single-family homes were built on the tract under consideration, they would

be just as destructive, if not more so, to the wetlands and the park, than the proposed tennis building and parking lot. The fact is, though, that none of Mindel's land encroaches upon the wetlands. In addition, the city has not undertaken to condemn the subject property and incorporate it into the proposed Alley Pond Park.

Concerning subdivision (d), I agree with the board that Mindel's hardship was not self-created. This is not a case where the owner, knowing of the zoning restrictions, purchased the property with the intent to later obtain a use variance (see 67 NY Jur, Zoning and Planning Laws, § 305, and cases cited therein). Rather, it was only after he had purchased the property that he discovered that the soft soil in the area would require prohibitive construction costs. It was only then that he sought the variance. In this connection the board properly pointed out that subdivision (d) itself states that: "Where all other required findings are made, the purchase of a zoning lot subject to the restrictions sought to be varied shall not itself constitute a self-created hardship."

Moreover, even if the practical difficulty were in fact self-created, that would not, in and of itself, deprive the board of its discretionary power to grant a variance (see *Matter of Cherry Hill Homes v Barbiere,* 28 NY2d 381; *Matter of Simpson v King,* 47 AD2d 634; *Designer Homes v City Council of City of Yonkers,* 36 AD2d 836; *Matter of Craig v Zoning Bd. of Appeals of City of Yonkers,* 50 AD2d 887). Certainly, therefore, purchasers who discover latent problems or obstacles which would not make it desirable to conform to the Zoning Resolution are entitled to relief. That is precisely the situation here.

The dissenters would deny the variance on the ground that the "uniqueness" of the property in question has not been established in accordance with the standards set forth in *Matter of Otto v Steinhilber* (282 NY 71, *supra).* They maintain that the same topographical conditions exist generally throughout the immediate area and that the owner's proper remedy lies in an application for a change of zone or in an action for a declaratory judgment and that therefore the board, in granting the variance, exceeded its authority. I disagree. Apart from the prohibitive cost involved in building one-family homes on the marshland, the commercial nature of the immediate area makes it inappropriate for residential development. Thus, while they correctly point out that a use

variance is not the appropriate remedy to be granted when the difficulties and hardships are shared generally with other property owners in the area, they fail to give sufficient consideration to the all-important additional characteristic of this property which makes it unique, viz., its proximity to Northern Boulevard. It is those combined factors which are controlling here.

Finally, section 22-21 of the Zoning Ordinance, which is entitled, "Uses Permitted by Special Permit By the Board of Standards and Appeals", establishes, *inter alia,* the following situations under which a special permit may be granted in a R1-2 district: camps, clubs, colleges or universities, outdoor tennis courts or ice-skating rinks, and riding academies or stables. Given the fact that permits can be granted for those special uses, the granting of a variance for an indoor tennis center is in keeping with the other uses permitted for the area. I fail to see how an indoor tennis center differs in character from such structures as a university gymnasium, a camp athletic building, a riding academy or stable, or an ice-skating rink, all of which are permitted as special uses. That being the case, the board could, as it did, properly grant a variance for an indoor tennis center as being in keeping with the established character of the district.

Thus, there being substantial evidence in the record to support all of the findings of the board, the judgment of Special Term sustaining the variance should be affirmed.

SUOZZI, J. (dissenting). I dissent and would reverse the judgment, grant the petition and annul the determination of the Board of Standards and Appeals which granted a variance to the intervenor for the construction of indoor tennis courts.

Although I agree that the subject property is entitled to some relief from the residential restrictions which presently encumber it, I must, nevertheless, vote to disapprove the variance for two reasons.

First, a variance is not the appropriate legal remedy for the subject parcel because its "uniqueness" has not been established in accordance with the standards set forth in *Matter of Otto v Steinhilber* (282 NY 71), which are incorporated in section 72-21 of the New York City Zoning Resolution. Second, even if the parcel is "unique", several other prerequisite factual findings for the granting of a use variance have not been established on the sparse record before this court.

The subject property is located in an R1-2 (one-family detached) zone, the most restricted form of residential district, as a result of a zoning ordinance passed by the New York City Board of Estimate and the City Planning Commission in 1961.

This property is located on the south side of Northern Boulevard between 232nd and 233rd Streets, which are mapped but nonexistent streets. The record establishes that this property is undeveloped and set back on the south side of Northern Boulevard 72 feet on the east and about 110 feet on the west. The plot runs 200 feet parallel with Northern Boulevard and has a depth of 300 feet on the westerly side and 402 feet on the easterly side. This plot is surrounded on three sides by other unimproved and uncultivated swampy land.

Section 72-21 of the Zoning Resolution of the City of New York incorporates the requirements for a use variance as set forth by the Court of Appeals decisions in *Matter of Otto v Steinhilber* (282 NY 71, *supra),* and *Dauernheim, Inc. v Town Bd. of Town of Hempstead* (33 NY2d 468).

In *Matter of Otto v Steinhilber (supra,* p 76) the court stated that in seeking a use variance, the applicant must show that "(1) the land in question cannot yield a reasonable return if used only for a purpose allowed in that zone; (2) that the plight of the owner is due to unique circumstances and not to the general conditions in the neighborhood which may reflect the unreasonableness of the zoning ordinance itself; and (3) that the use to be authorized by the variance will not alter the essential character of the locality."

Specifically, section 72-21 of the Zoning Resolution provides, among other things, as follows:

"Findings Required for Variances

"When in the course of enforcement of this resolution, any officer from whom an appeal may be taken under the provisions of Section 72-11 (General Provisions) has applied or interpreted a provision of this resolution, and there are practical difficulties or unnecessary hardship in the way of carrying out the strict letter of such provision, the Board may, in accordance with the requirements set forth in this Section, vary or modify the provision so that the spirit of the law shall be observed, public safety secured, and substantial justice done.

"Where it is alleged that there are practical difficulties or

unnecessary hardship, the Board may grant a variance in the application of the provisions of this resolution in the specific case, provided that as a condition to the grant of any such variance, the Board shall make each and every one of the following findings:

"(a) That there are unique physical conditions, including irregularity, narrowness or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to and inherent in the particular zoning lot; and that, as a result of such unique physical conditions, practical difficulties or unnecessary hardship arise in complying strictly with the use or bulk provisions of the resolution; and that the alleged practical difficulties or unnecessary hardship are not due to circumstances created generally by the strict application of such provisions in the neighborhood or district in which the zoning lot is located.

"(b) That because of such physical conditions there is no reasonable possibility that the development of the zoning lot in strict conformity with the provisions of this resolution will bring a reasonable return, and that the grant of a variance is therefore necessary to enable the owner to realize a reasonable return from such zoning lot. This finding shall not be required for the granting of a variance to a non-profit organization.

"(c) that the variance, if granted, will not alter the essential character of the neighborhood or district in which the zoning lot is located; will not substantially impair the appropriate use or development of adjacent property; and will not be detrimental to the public welfare.

"(d) That the practical difficulties or unnecessary hardship claimed as a ground for a variance have not been created by the owner or by a predecessor in title. Where all other required findings are made, the purchase of a zoning lot subject to the restrictions sought to be varied shall not itself constitute a self-created hardship.

"(e) That within the intent and purpose of this resolution the variance, if granted, is the minimum variance necessary to afford relief; and to this end, the Board may permit a lesser variance than that applied for."

From my review of this record, there is simply no basis for a finding of uniqueness. The record clearly indicates that the subject parcel is surrounded on the east and west by a large land area which is unimproved. This unimproved area is in

precisely the same proximity to Northern Boulevard and the commercial uses prevalent thereon as is the subject parcel. In addition, this surrounding unimproved area shares the same topography, i.e., swampy soil condition, as the subject parcel. Accordingly, there is nothing unique about this parcel since all of the problems which afflict it are shared by all of the unimproved land in this area which is of substantial size.

A claimed confiscation of value resulting in harship with respect to a parcel of property involved in an application for a variance may result from the uses to which properties in the immediate neighborhood of the subject parcel have been put, or from the general deterioration of the neighborhood, either of which give rise to a claim that the subject property has been rendered unmarketable or unusable for the purposes to which it is restricted by the ordinance. However, where this claim is made "it is seldom that such situation exists with respect only to the property which is the subject of the application. Usually the same undesirable neighborhood uses or deterioration affect other properties in the same area" (3 Rathkopf, Law of Zoning and Planning [4th ed], p 45-3). In this situation, a use variance cannot be granted. As stated in Rathkopf: *"Difficulties or hardships shared with others go to the reasonableness of the ordinance generally and will not support a variance as to one parcel upon the ground of hardship."*

It is the uniqueness factor which differentiates an application for a use variance from a declaratory judgment action challenging a zoning classification. When the claimed difficulties are not unique to the particular parcel, the property owner's remedy is to apply to the legislative body for rezoning, and if unsuccessful to institute a declaratory judgment action challenging the zoning as unreasonable as to all parcels in the use district similarly situated and affected *(Matter of Otto v Steinhilber,* 282 NY 71, *supra).*

The prescription against allowing a use variance to a particular parcel where the difficulty is shared with other property owners, is in harmony with the principle of division of powers between the appropriate legislative authority and the Zoning Board of Appeals which is an administrative body.

The power to zone property is vested exclusively within the jurisdiction and authority of the appropriate legislative body. Indeed, following a successful declaratory judgment action challenging a zoning classification, the courts do not take it

upon themselves to rezone the property involved. Rather, it is well established that following a successful court challenge to a zoning classification, the property owner must seek legislative approval of a specific use through a rezoning of the property.

A use variance on the other hand, when granted, confers the benefit of the use directly and immediately and by-passes the need for any legislative action by the elected body entrusted with the zoning authority. If use variances were granted to property owners whose parcels contained difficulties shared by others, the net result would be that all the other similarly situated owners would also be entitled to use variances. Under those circumstances, an effective rezoning would be accomplished by the board, which would constitute an usurpation of legislative powers (see *Matter of Clark v Board of Zoning Appeals of Town of Hempstead,* 301 NY 86; *Ward v Zoning Bd. of Appeals of Town of Hartford,* 153 Conn 141, 145). As the Court of Appeals stated in *Matter of Levy v Board of Stds. & Appeals of City of N. Y.* (267 NY 347, 352-353): "No power has been conferred upon the Board of Standards and Appeals to review the legislative general rules regulating the use of land * * * The Board does not exercise legislative powers * * * Its function is primarily administrative."

By approving this use variance for the subject premises without a demonstration of uniqueness, Special Term and the majority are effectively conferring upon the Board of Standards and Appeals an unauthorized power to rezone—a power which the courts have repeatedly and unequivocally refused to exercise in those cases where zoning restrictions have been judicially declared unconstitutional because of their confiscatory and discriminatory effects upon property. By permitting this use variance to stand, this court is indorsing direct resort to the Board of Standards and Appeals and the circumvention of the rezoning or declaratory judgment approach, and is creating an unfortunate precedent for comparable relief for the rest of the unimproved land in the area. In addition, by legalizing this particular commercial use, this court is permitting the property owner to decide which commercial use is most beneficial for the property and conferring upon him a benefit not shared by any other property owner.

Quite apart from the fact that this property is not unique and, therefore, not eligible for a variance, the findings re-

quired by subdivisions (b) and (e) of section 72-21 of the Zoning Resolution are not sustained by substantial evidence.

As a result of pursuing this appeal by the appendix method, the record is not as complete as it should be.

The issue of whether the owner may obtain a reasonable return by utilizing the land for any of the purposes permitted by the Zoning Resolution either as a matter of right or by special permit use, poses a critical question which cannot be resolved on this record. The only evidence with respect to the value of the land was contained in an exhibit which purported to show the value for residential plots pursuant to several alternative residential plans. On the basis of that exhibit, the value of the land exceeded $500,000. On the basis of such a value, I have no doubt that the residential utilization of this land could not produce a reasonable return even without the additional expenses required for piling because of the swampy conditions. However, in the absence of any other explanation in the record as to how this value was arrived at, it is not unreasonable to infer that it reflects the purchase price and/ or total costs to date of this property to its owner. If such be the case, this use variance cannot be sustained because any hardship to the property owner must be considered as being self-created in accordance with the principle enunciated by the Court of Appeals in *Matter of Douglaston Civic Assn. v Galvin* (36 NY2d 1).

I am well aware that subdivision (d) of section 72-21 of the Zoning Resolution of the City of New York, provides that "purchase of a zoning lot subject to the restrictions sought to be varied shall not itself constitute a self-created hardship." However, that provision is only speaking of those situations where the property owner paid a purchase price commensurate with the value of the property as presently zoned.

I would find it most difficult to believe that any one would have paid a price comparable to the indicated value of this land with the intention of using it for residential purposes. It is more likely that this value reflects a purchase price that was paid by the owner with the expectation of either obtaining a change of zoning or a use variance. Therefore, in the case at bar, the value of the property as claimed by the property owner as a basis for computing a reasonable return, is obviously the value that the parcel would have had if a zoning change or use variance were granted.

The Court of Appeals in *Matter of Douglaston Civic Assn. v*

*Galvin* (36 NY2d 1, *supra),* has emphatically eliminated this construction of the concept of value of the property for the purposes of determining the possibility of reasonable return. In that case the court stated (p 9): "We would merely add that in affirming the decision below we do not intend to imply our approval of the Appellate Division's statement that the board acted correctly 'in apparently concluding that a projected return of income, for a parcel for which a variance is sought, may be based on present value, rather than its original cost.' (43 A D 2d 739, 740.) While present value most often will be the relevant basis from which the rate of return is to be calculated, it is important that the 'present value' used be the value of parcel as presently zoned, and not the value that the parcel would have if the variance were granted. While the record does not speak to this point, we suspect that the $121,000 figure here represents the value the parcel would have if granted the variance." (See, also, *Matter of Clark v Board of Zoning Appeals of Town of Hempstead,* 301 NY 86, *supra; Matter of Gro,* 440 Pa 552.)

Another problem is presented by the fact that, on this record, it cannot be determined that the utilization of this property for outdoor tennis courts would not have provided a reasonable return for the owner. The Zoning Resolution permits, as a special use, outdoor tennis courts. In contrast to a use variance, the inclusion of a special use in the ordinance as one which is permitted under certain conditions "is equivalent to a legislative finding that the prescribed use is one which is in harmony with the other uses permitted in this district" (2 Rathkopf, Law of Zoning and Planning [3d ed], p 54-5). Until it has been established, and I submit that it has not been established on this record, that the property cannot provide a reasonable return by utilizing it for outdoor tennis courts, the variance for indoor tennis courts should not be approved.

Finally, the board's finding that the variance granted for the indoor tennis courts is the minimum variance necessary to afford relief, cannot be sustained. Although a use variance was granted for a "one story * * * indoor tennis center", the property owner admits that this variance permits a 35-foot elevation for the tennis center and is "tantamount to two and a half stories according to the Building Department".

Accordingly, the petition should be granted and the board's determination granting the use variance should be annulled.

GULOTTA, J. (dissenting). I dissent and would reverse the

judgment, grant the petition and annul the determination of the respondent Board of Standards and Appeals.

In my opinion, the "uniqueness" of intervenor's particular parcel has not been established in accordance with the standards set forth in *Matter of Otto v Steinhilber* (282 NY 71). The topographical condition upon which he relies exists generally throughout the immediate area, all of which is identically zoned. To this extent, I therefore concur in the dissenting opinion of Mr. Justice SUOZZI. In light of this determination I find it unnecessary to reach any further issue.

Under the circumstances here present, the intervenor's proper remedy lies in an application for a change of zone or in a declaratory judgment action, but not in an application for a use variance.

HOPKINS, J. P., and MARGETT, J., concur with SHAPIRO, J.; SUOZZI and GULOTTA, JJ., dissent and vote to reverse the judgment, grant the petition and annul the determination, with separate opinions.

Judgment of the Supreme Court, Queens County, dated May 17, 1977, affirmed, with one bill of $50 costs and disbursements.