Matter of 80 Woodland Ave, LLC v Village of Catskill (2025 NY Slip Op 04284)

Matter of 80 Woodland Ave, LLC v Village of Catskill

2025 NY Slip Op 04284

Decided on July 24, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 24, 2025

CV-24-0634
[*1]In the Matter of 80 Woodland Ave, LLC, et al., Appellants,
v
Village of Catskill et al., Respondents.

Calendar Date:May 27, 2025

Before:Egan Jr., J.P., Aarons, Pritzker, Ceresia and Mackey, JJ.

Whiteman Osterman & Hanna LLP, Albany (Thomas A. Shepardson of counsel), for appellants.
Wayne Thompson, Catskill, for respondents.

Egan Jr., J.P.
Appeal from a judgment of the Supreme Court (Sharon Graff, J.), entered March 19, 2024 in Greene County, which partially dismissed petitioners' application, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, to review a determination of respondent Village of Catskill Zoning Board of Appeals denying petitioners' request for a use variance.
Petitioner Dennis Frascello is a member of 80 Woodland Ave, LLC, which purchased the former St. Patrick's Academy in the Village of Catskill, Greene County, in 2017. The property contains three buildings and is located in an area zoned for single-family residences and limited development given its location near the Hudson River. After petitioners' 2022 application for a building permit to convert the three buildings on the property into 43 apartment units (hereinafter the project) was denied because multi-family use was not permitted in the zoning district, they applied to respondent Village of Catskill Zoning Board of Appeals (hereinafter the ZBA) for a use variance in March 2023. Following public hearings, the ZBA denied the application upon the grounds that petitioners failed to show either that traffic generated by the project would not affect the essential character of the neighborhood or that the hardship they experienced from the existing zoning regulations was not self-created. Petitioners commenced this combined CPLR article 78 proceeding and action for declaratory judgment to challenge the ZBA's determination. Supreme Court dismissed the petition, concluding that the ZBA's findings with regard to traffic lacked a rational basis in the record but that the ZBA did rationally determine that the hardship claimed by petitioners was self-created. Petitioners appeal.
We affirm. It is well settled that "[l]ocal zoning boards have broad discretion in considering applications for variances, and judicial review is limited to determining whether the action taken by the board was illegal, arbitrary or an abuse of discretion" (Matter of Ifrah v Utschig, 98 NY2d 304, 308 [2002]; see Matter of Freepoint Solar LLC v Town of Athens Zoning Bd. of Appeals, 234 AD3d 127, 130 [3d Dept 2024], lv denied 43 NY3d 907 [2025]). Where, as here, an applicant seeks a use variance, he or she is obliged to show that the zoning regulations in effect cause unnecessary hardship, meaning "that (1) the property cannot provide a reasonable return as it is currently zoned, (2) the hardship results from characteristics unique to the property, (3) the proposed use will not alter the essential character of the neighborhood and (4) that the hardship has not been self-created" (Matter of Source Renewables, LLC v Town of Cortlandville Zoning Bd. of Appeals, 213 AD3d 1178, 1180 [3d Dept 2023]; see Village Law § 7-712-b [2] [b]). A zoning board's determination as to whether an applicant satisfied that burden will be upheld so long as it has a rational basis and is supported by the record (see Matter of Pecoraro [*2]v Board of Appeals of Town of Hempstead, 2 NY3d 608, 613 [2004]; Matter of Wen Mei Lu v City of Saratoga Springs, 162 AD3d 1291, 1292 [3d Dept 2018]). The ZBA relied upon the third and fourth prongs of the unnecessary hardship test to deny petitioners' application, and we examine each in turn.
With regard to the third prong, "[w]hether a variant use would disturb the essential character of a residential neighborhood is a determination which, like other zoning decisions, is best left to '[l]ocal officials [who] possess the familiarity with local conditions necessary to make the often sensitive planning decisions which affect the development of their community' " (Matter of Rostlee Assoc. v Amelkin, 121 AD2d 725, 726 [2d Dept 1986], lv denied 69 NY2d 603 [1987], quoting Matter of Cowan v Kern, 41 NY2d 591, 599 [1977]). The proof before the ZBA reflected that the immediate neighborhood around the property largely consisted of single-family homes and was not zoned for a large apartment complex like the project. It was further undisputed that automotive traffic would be generated if the project was built, but petitioners suggested that such would not alter the character of the neighborhood because their traffic analysis showed that the traffic generated by potential tenants would be equivalent to that experienced when the school was operating on the property. No expert proof was submitted to call that assessment into question and, as petitioners note, "expert opinion regarding traffic patterns, when presented, may not be disregarded in favor of generalized community opposition" (Matter of Retail Prop. Trust v Board of Zoning Appeals of Town of Hempstead, 98 NY2d 190, 196 [2002]).
That said, because the school had ceased operations in 2006 and the property had been vacant since, apart from a stint between 2008 and 2010 when the school served as the temporary county courthouse, even traffic at the level experienced when the school was operating would be a significant increase over what the neighborhood had experienced in the two decades since the school's closure. Petitioners further acknowledged in response to public comments that, while the "peak traffic" hours at the project would be similar to those at a school, the traffic would be unlike that coming to and from a school because "the project will generate traffic throughout different times of the day." Contrary to the conclusion of Supreme Court, the ZBA could rationally find from the foregoing that petitioners had failed to demonstrate "that the [project] would not have an 'adverse impact on the neighborhood' " as required (Matter of Greco v Denison, 195 AD2d 660, 661 [3d Dept 1993], quoting Matter of Sheeley v Levine, 147 AD2d 871, 873 [3d Dept 1989]; see Matter of Rehabilitation Support Servs., Inc. v City of Albany Bd. of Zoning Appeals, 140 AD3d 1424, 1425 [3d Dept 2016]; Matter of Dave Van Denburg, Inc. v Town of Bethlehem Bd. of Appeals, 122 AD2d 471, 471-472 [3d Dept 1986]; Matter of Rostlee [*3]Assoc. v Amelkin, 121 AD2d at 726).
As for the fourth prong relied upon by the ZBA, "hardship will be considered self-imposed when the applicant for the variance acquired the property subject to the restriction and was aware of the restriction at the time of purchase," which is exactly the situation here (Matter of Diana v City of Amsterdam Zoning Bd. of Appeals, 243 AD2d 939, 940 [3d Dept 1997]; see Matter of Drake v Zoning Bd. of Appeals of Vil. of Colonie, 183 AD2d 1031, 1032 [3d Dept 1992]). To be sure, a hardship might not be self-created where a landowner knew about the zoning restrictions impacting his or her property but ended up needing a variance because "the original purpose of the [buildings] became obsolete" over the period of ownership or the owner only learned of that obsolescence after acquiring the property (Matter of Kontogiannis v Fritts, 131 AD2d 944, 946 [3d Dept 1987]; see Matter of Citizens Sav. Bank v Board of Zoning Appeals of Vil. of Lansing, 238 AD2d 874, 875 [3d Dept 1997]; Matter of Douglaston Civic Assn. v Klein, 67 AD2d 54, 61 [2d Dept 1979], affd 51 NY2d 963 [1980]). Petitioners here acquired the property at a point when the school buildings on it had long been vacant and were fully aware of the zoning restrictions that limited the potential uses for those buildings, however, and the only thing they arguably learned in the years since is that it would be difficult to turn a profit by developing the property in a manner that complied with those restrictions. Petitioners, in short, continue to "possess[ ] the same unused, . . . difficult-to-develop property that [80 Woodland] purchased, and although the purchase may now be viewed as a poor investment, courts are not responsible for 'guarantee[ing] the investments of careless land buyers' " (Matter of Expressview Dev., Inc. v Town of Gates Zoning Bd. of Appeals, 147 AD3d 1427, 1430 [4th Dept 2017], quoting Matter of Barby Land Corp. v Ziegner, 65 AD2d 793, 794 [2d Dept 1978], affd for reasons stated 49 NY2d 729 [1980]; see Matter of Diana v City of Amsterdam Zoning Bd. of Appeals, 243 AD2d at 940-941). It follows that there was a rational basis for the ZBA to conclude that the hardship was self-created (see Matter of Rehabilitation Support Servs., Inc. v City of Albany Bd. of Zoning Appeals, 140 AD3d at 1426; Matter of Morrissey v Apostol, 75 AD3d 993, 997 [3d Dept 2010]; Matter of Diana v City of Amsterdam Zoning Bd. of Appeals, 243 AD2d at 940-941). As the ZBA rationally found that petitioners had failed to establish two of the factors needed to establish unnecessary hardship — and "a failure to meet any one factor would be sufficient for the [ZBA] to refuse petitioner[s'] request" — it properly denied petitioners' application for a use variance without assessing whether they had demonstrated that the other two components applied (Matter of Kontogiannis v Fritts, 131 AD2d at 946).
Petitioners finally complain that they were prejudiced in some way because one of the [*4]members of the ZBA mistakenly believed that he should not vote on their application and did not do so. The ZBA was free to act, however, with "the affirmative vote of a majority of all the members . . . as fully constituted regardless of vacancies or absences" (Village Law § 7-712-a [13] [a]; see Rockland Woods v Incorporated Vil. of Suffern, 40 AD2d 385, 387 [2d Dept 1973]). Four of the ZBA's five members voted and, as petitioners' application was denied by an absolute majority of 3-1, the determination was valid and could not have been affected by the potential vote of the fifth member (see General Construction Law § 41; Village Law § 7-712-a [13] [a]; cf. Matter of Hoffis v Zoning Bd. of Appeals of City of Glens Falls, 166 AD2d 850, 851-852 [3d Dept 1990]).
To the extent they are not addressed above, petitioners' remaining arguments have been considered and found to lack merit.
Aarons, Pritzker, Ceresia and Mackey, JJ., concur.
ORDERED that the judgment is affirmed, without costs.