OPINION OF THE COURT
Thomas E. Mercure, J.
Petitioner has brought the within CPLR article 78 proceeding to challenge a May 29, 1985 determination of the respondent Zoning Board of Appeals of the City of Saratoga Springs (hereafter Board) to grant a variance to intervenor-respondent *494 Siro’s, Inc. (hereafter Siro’s) to construct a 20-foot by 20-foot detached building on the south side of its existing building at 168 Lincoln Avenue, Saratoga Springs, for the purpose of providing seasonal lavatory facilities and storage. It is uncontroverted that Siro’s use of the property as a restaurant and tavern constituted a prior nonconforming use in an R-2 (single-family residential) zone of the city.
In support of the petition, petitioner contends that Siro’s made an inadequate showing of hardship to justify the extension of a prior nonconforming use; that no evidence was presented to show that the extension would not be injurious to the neighborhood; that the extension is, in fact, injurious to the neighborhood and public welfare and not in harmony with the general purpose and intent of the zoning ordinance; and that the Board failed to comply with the provisions of the State Environmental Quality Review Act (ECL art 8 [hereafter SEQRA]). As a result, petitioner argues, the action of the Board was arbitrary and capricious and in violation of the zoning ordinance and SEQRA.
In defense of the petition, respondents[1] contend: (1) that the proceeding was not timely commenced; (2) that petitioner lacks standing as an aggrieved person and/or has failed to allege prima facie facts to support a claim of aggrievement; and (3) that the decision of the Board was a proper exercise of discretion and in no manner arbitrary, capricious or affected by errors of law.
I. TIMELINESS OF THE PROCEEDING
Respondents’ first contention, that the proceeding was not timely commenced and that the court is required, accordingly, to dismiss the petition, is clearly incorrect. General City Law § 82 (1) (a) provides that an article 78 proceeding must be commenced "within thirty days after the filing of a decision in the office of the board”. The parties are in agreement that such filing took place on June 13, 1985 and that the within proceeding was commenced on July 15,1985.
Notwithstanding the argument of respondents to the contrary, it is clear that June 13, 1985 is not to be counted as one of the 30 days. General Construction Law § 20 provides, as *495 is relevant, that "[i]n computing any specified period of time from a specified event, the day upon which the event happens is deemed the day from which the reckoning is made. The day from which any specified period of time is reckoned shall be excluded in making the reckoning.” This being the case, the first of the 30 days was June 14 and the last was July 13, 1985. The latter happened to be a Saturday. General Construction Law § 25-a provides, as is relevant, that "[w]hen any period of time, computed from a certain day * * * after which * * * an act is * * * required to be done, ends on a Saturday, Sunday or a public holiday, such act may be done on the next succeeding business day”. Since July 13 was a Saturday, the limitations period was extended to the next business day, Monday, July 15, 1985 (see, e.g., Matter of Scuderi v Board of Educ., 49 AD2d 942, appeal dismissed 38 NY2d 848).
II. STANDING
The allegations of the petition in support of petitioner’s standing are as follows:
"2. Petitioner’s residence is located within one hundred feet of the premises of Siro’s, Inc. at 168 Lincoln Avenue, used as a restaurant, and is affected by the vehicular and pedestrian traffic, parking, noise and other impacts of the non-conforming commercial use on the character of life in the residential neighborhood.”
"16. The granting of said application causes damage to your petitioner in that it reduces the values of the property in this residence district and is injurious to the neighborhood and public welfare.”
Of the above allegations, it is felt that only one, that petitioner’s residence is located within 100 feet of Siro’s, supports a finding of standing. The remaining portion of paragraph 2 concerns itself solely with the permitted operation of the nonconforming use and does not allege any increase in vehicular and/or pedestrian traffic, parking, noise, or other impacts as a result of the addition of lavatory and storage areas. That is, petitioner’s grievance is with Siro’s restaurant business, not with the granting of the variance or any use resulting therefrom. The allegations of paragraph 16 are purely speculative, conclusory and unsupported by competent evidence.
In an affidavit of the petitioner, sworn to July 29, 1985, annexed to her replies to the answers of the Board and Siro’s, *496 and handed up at the time of argument at Special Term,[2] it is further alleged as follows:
"1.1 am a resident of the City of Saratoga Springs, Saratoga County, New York, and have resided in and owned premises at 136 Nelson Avenue in Saratoga Springs at all times hereinafter mentioned.
"2. My residence is located within one hundred feet of the premises of Siro’s, Inc. located at 168 Lincoln Avenue.
"3. The creation and expansion of the outdoor bar business and the associated bathroom structure has impaired my enjoyment and use of my property, altered and impaired the existing character of my neighborhood, and lowered the value of my property in that
"A. the concentration within a period of several hours of an additional four to five hundred people daily on property within one hundred feet of my property significantly increases the noise level on my property for a period extending into the evening hours;
"B. live and recorded music is played outdoors as a component of the outdoor bar business thereby significantly increasing the noise level on my property for a period extending into the evening hours;
"C. an increase of automobile traffic occurs in my neighborhood for a period of hours extending into the evening hours as a result of the additional four to five hundred people frequenting the outdoor bar business, which causes increased noise, vehicular emissions, traffic hazards and drunken driving, and is annoying and aesthetically unpleasing;
"D. an increase in truck traffic occurs in my neighborhood as a result of the increased supplies necessary to service the outdoor bar business, which causes increased noise, vehicular emissions, and traffic hazards; and
"E. an increased demand for parking is created by the outdoor bar business which results in illegal parking and is aesthetically unpleasing.”
It is abundantly clear from a reading of these allegations that petitioner’s complaint is with Siro’s restaurant business, and more particularly the outdoor bar business. However, *497 neither the restaurant nor the outdoor bar business is the subject of the variance request or, as a result, this proceeding. The fact is that it was the increase in Siro’s business, and particularly the increase in the outdoor bar business during the August racing season[3] which brought about the need for increased lavatory facilities and prompted the variance request. Petitioner has offered no evidence, and in fact has not even alleged, that the additional three toilets and one urinal resulting from the granting of the variance brought hundreds of patrons to Siro’s establishment. To so argue would be ludicrous. This being the case, there can be no question that the sole basis for petitioner’s standing in this proceeding is that she owns property and resides some 100 feet from Siro’s, as no competent allegation of injury, economic, aesthetic, or otherwise, resulting from the granting of the variance has been made, and no such injury can be reasonably inferred from the nature of the variance or the de minimis extension of the prior use permitted thereby.
The inquiry thus distills to a limited question of law, i.e., whether the ownership of realty, and residence therein, within reasonably close proximity, but not adjacent, to the property benefited by the variance, in the absence of an allegation or showing of actual or likely impact, is sufficient to confer standing on a petitioner contesting the validity of the grant of the variance.
The traditional view of New York courts has been that a person is not aggrieved and therefore lacks standing to challenge administrative action unless he can affirmatively establish that he has been personally and adversely affected thereby (Matter of Douglaston Civic Assn. v Galvin, 36 NY2d 1, 5). However, this view has eroded to some extent in recent years.
In Matter of Douglaston Civic Assn. v Galvin (supra), the Court of Appeals extended the prior rule so as to grant a neighborhood association standing to contest the grant of a variance to construct a six-story multiple dwelling in a single-family residential zone. In so doing, the court at least suggested that home ownership in the vicinity of the proposed project, without more, was sufficient to confer standing. Per *498 haps more significantly, it directly criticized what it found to be "the apparent readiness of our courts in zoning litigation to dispose of disputes over land use on questions of standing without reaching the merits, an attribute which is glaringly inconsistent with the broadening rules of standing in related fields” (36 NY2d 1, 6, supra).
Next, in Matter of Dairylea Coop. v Walkley (38 NY2d 6), the court held that in order to establish standing to contest the action of an administrative agency, a petitioner need only show that the administrative action will in fact have a harmful effect on him and that the interest asserted is arguably within the "zone of interest” to be protected by the statute. The decision specifically emphasized that lack of "injury in fact” will defeat standing (38 NY2d 6, 11, supra). In my opinion, Dairylea, and particularly the specific requirement of injury in fact, resolved any uncertainty created by Douglaston (supra) as to whether mere home ownership in the neighborhood of the contested use is sufficient to confer standing. It becomes apparent that in Douglaston, the sheer quantitative scope of the project was such that adverse impact on the neighborhood could be found without a specific evidentiary showing thereof.
More recently, a series of Appellate Division opinions, the great majority from the Second Department, have seemingly abandoned the requirement of injury in fact, but a review of the underlying facts in each case indicates otherwise. In Matter of Tuxedo Conservation & Taxpayers Assn. v Town Bd. (69 AD2d 320), the Appellate Division, Second Department, held that all individual petitioners, some living as far away as 1,500 feet, had standing to contest the action of the town board in approving an application to build a 3,900-unit planned integrated development. However, it should be noted that the entire population of the town was 2,967. In fact, the court held that the finding of standing was based upon "the theory that all the petitioners may be adversely affected, inter alia, in such matters as noise, water and air pollution and traffic density; and the project will wreak havoc on the Comprehensive Master Plan of 1972, if the decision of the town board is permitted to stand undisturbed” (69 AD2d 320, 324, supra).
In Freundlich v Town Bd. (73 AD2d 684, affd 52 NY2d 921), the Second Department seemingly made a finding of standing based upon ownership of realty "situated near” the contested *499 use, but the fact that this use involved development of an 18-lot subdivision makes it clear that the court could and did reasonably infer negative impact. In Grasmere Homeowners’ Assn. v Introne (84 AD2d 778), the same court held a civic association to have standing to contest establishment of two community residence facilities by the State Office of Mental Retardation and Developmental Disabilities because the members of the civic association lived near the proposed sites. These homeowners were found to be within the "zone of interest”. There is no question that placement of facilities for the mentally handicapped in a residential community is a matter of considerable public concern, justified or not. Glen Head-Glenwood Landing Civic Council v Town of Oyster Bay (88 AD2d 484) involved the rezoning of a 21.57-acre parcel in a predominantly 1-acre single-family residential zone to a condominium category, allowing at least 126 units where the existing zoning would have allowed but 20 to 25.
In Matter of Prudco Realty Corp. v Palermo (93 AD2d 837, affd 60 NY2d 656), the Second Department again conferred standing upon a petitioner because of its ownership of nearby realty, in this case 200 feet distant. However, the disputed use was operation of a gasoline service station, prohibited by the zoning ordinance then in effect. Operation of a service station can be expected to impact significantly upon the surrounding neighborhood. Use of its restrooms by patrons would be a different matter. Interestingly, in affirming, the Court of Appeals found that the defense of lack of standing had been waived by both the respondent and intervenor-respondent. The merit of that issue was, accordingly, not reached (60 NY2d 656, 657, supra). Last, in Matter of Marasco v Luney (99 AD2d 492, lv denied 63 NY2d 605), the court stated: "The law is settled that nearby and adjacent landowners are, as a matter of law, empowered to bring proceedings pursuant to CPLR article 78 to challenge the decision of a zoning board of appeals as 'persons aggrieved’ by that decision” (99 AD2d 492, 493-494, supra). As authority, it cited Douglaston (supra), Tuxedo (supra), Grasmere (supra), and Prudco (supra). In my opinion, none of the cited cases stand for that broad a proposition, for the reasons already stated. Further, in Marasco, the variance involved the permitting of a Midas muffler shop in a neighborhood shopping district in the Village of Tarrytown, a use obviously out of character with the neighborhood and likely to impact disfavorably. Last, to the extent that Marasco might be interpreted as eliminating injury as an element of *500 standing, it is inconsistent with Matter of Dairylea Coop. v Walkley (supra) and is, accordingly, incorrect.
The conclusion is inescapable that injury in fact is still an indispensable prerequisite to standing. For the reasons already stated, it is my opinion that petitioner has failed to allege or establish any injury and no injury can be inferred from the nature of the permitted extension of the use by construction of lavatory and storage facilities at the rear of the subject premises. Inasmuch as the court finds that petitioner lacks the requisite standing, her remaining contentions will not be addressed.
The petition is in all respects dismissed.

. The motion of Siro’s, Inc. to intervene is granted on consent. Inasmuch as the posture and legal contentions of the Board and Siro’s are essentially the same, they shall from time to time be referred to in the aggregate as the respondents for the sake of simplicity.

. There is serious question as to whether this affidavit should be considered at all, as CPLR 7804 (d) provides for a reply only to a counterclaim, to new matter in the answer or where the accuracy of proceedings annexed to the answer is disputed. In this case, none of those circumstances existed.

. It appears from a review of the record of proceedings before the Board and the papers submitted in connection with this proceeding that Siro’s is located directly adjacent to the flat track at Saratoga, an immensely popular attraction during the annual August meet, and is, and has been for years, a favorite postrace gathering place.