OPINION OF THE COURT
William H. Keniry, J.
Petitioners have commenced this CPLR article 78 proceeding to challenge an October 22, 1985 determination of the Zoning Board of Appeals of the Town of Moreau which granted a special use permit to respondents Anthony F. Simione, Anthony L. Simione and Donald J. Bates (hereinafter owners) to construct a four-unit apartment building on a 31-acre parcel of land. The property, located at the intersection of Fawn and Fortsville Roads in the Town of Moreau, is in an "A and R-3” (agricultural-farm; one-family and two-family dwellings) zone.
The seven petitioners are the owners of property both adjacent to and in close proximity to the subject premises. The petitioners allege that the Zoning Board’s decision was arbitrary, capricious, an abuse of discretion and in error of law. The petitioners specifically contend that the Zoning Board failed to comply with the provisions of the State Environmental Quality Review Act (ECL art 8), hereinafter SEQRA, by failing to require the preparation and submission of an environmental impact statement (EIS) by the owners.
In defense of the petition, the Zoning Board and owners contend that the application for the special use permit granted is not subject to SEQRA review since the construction of a four-unit apartment building on a 31-acre site is not a Type I action under SEQRA. The respondents owners further contend that the petitioners lack standing and that the Zoning Board’s action in granting a special use permit is a ministerial act which is exempt from SEQRA compliance.
The court must first consider whether the petitioners have standing. Paragraphs 1, 5, 6, 7, 8, 10 and 11 of the petition allege that the respective petitioners are the owners of parcels of real property ranging in size from 2.93 acres to 78.95 acres located adjacent to or in close proximity to the parcel in *522 question. The minutes of the public hearing on this application held September 24, 1985 indicate that concerns were raised by some of the petitioners about increased traffic, sewage disposal, water supply, water quality and congestion.
It has been generally held that an individual is not aggrieved and therefore lacks standing to challenge an administrative determination unless he can establish that he has been personally and adversely affected by the decision (Matter of Douglaston Civic Assn. v Galvin, 36 NY2d 1). In short, a petitioner must establish an "injury in fact” occasioned by the administrative action (Matter of Dairylea Coop. v Walkley, 38 NY2d 6).
Respondents owners argue that the petitioners are not aggrieved by the issuance of this special use permit and cite the recent case of Hoxsie v Zoning Bd. of Appeals (129 Misc 2d 493) for the proposition that "injury in fact” means a showing of actual or likely adverse impact. The owners contend that the alleged adverse impact from the construction of one four-unit apartment building has not been adequately established to result in a finding that the petitioners have standing to challenge the Zoning Board’s decision.
As stated in Matter of Douglaston Civic Assn. v Galvin (supra, p 6) a case in which a New York court for the first time granted standing to a civic association, the court was "troubled by the apparent readiness of our courts in zoning litigation to dispose of disputes over land use on questions of standing without reaching the merits, an attribute which is glaringly inconsistent with the broadening rules of standing in related fields.” The situation now before the court is distinguishable from Hoxsie (supra) wherein the petitioner’s alleged injuries were directly related to the operation of a restaurant, not the construction of additional bathroom facilities which was the action approved by the city zoning board.
It is evident to the court that the construction of apartment dwelling units, even only one building, in what appears to be an essentially rural environment could reasonably adversely impact adjacent properties. Thus, the petitioners raised during the public hearing enough potentially adverse effects to their property rights to establish the necessary standing to commence this article 78 review. The respondents owners’ affirmative defense which raises the petitioners’ lack of standing is dismissed.
Turning to the merits of this petition, the record establishes *523 that the owners filed an application, following denial of a request for a building permit, for a special use permit to construct a four-unit apartment building. The original application sought permission to construct the building on a 280-feet by 200-feet lot. The application was thereafter amended to reflect a lot size of 1,114 feet by 1,613 feet. Following a public hearing, the permit was granted by the Zoning Board. The petitioners contend that the owners intend to construct 20 four-unit apartment buildings on the 31-acre parcel. This contention is apparently based upon the submission of a map to the Zoning Board which shows a division of the property into separate parcels with indicated roads.
The Zoning Board did not require the preparation of an environmental impact statement (EIS) prior to approving the special permit. The Zoning Board’s answer to the petition alleges that an EIS was not required since an apartment house was an authorized use by special permit in an A and R-3 zone upon compliance with area and road frontage requirements. It is documented that the parcel involved exceeds all area and road frontage requirements imposed by the town zoning law for an apartment building.
The key issue for resolution by the court is thus to decide whether the Zoning Board’s decision that an EIS was not necessary in this situation was appropriate. The petitioners contend that the proposed project is clearly classified as a Type I project under the regulations promulgated under SEQRA which requires an EIS. The petitioners contend that the project falls within one or more of the following definitions set forth in 6 NYCRR 617.12 (b) which state as follows:
"(b) The following actions are Type I if they are directly undertaken, funded or approved by an agency * * *
"(2) The following changes in the allowable uses within any zoning district, affecting 25 or more acres of the district * * * "(ii) authorizing residential uses within an agricultural district * * *
"(5) construction of new residential units which meet or exceed the following thresholds * * *
"(ii) 50 units not to be connected (at commencement of habitation) to community-or publicly owned utilities * * *
"(6) construction of new nonresidential facilities which meet or exceed any of the following thresholds; or the expansion of existing nonresidential facilities by more than 50 percent of any of the following thresholds, providing that the expansion *524 and the existing facilities, when combined, meet or exceed any threshold contained in this section:
"(i) a project or action which involves the physical alteration of 10 acres;
"(ii) a project or action which would use ground or surface water in excess of 2,000,000 gallons per day;
"(iii) parking for 1,000 vehicles;
"(iv) in a city, town or village having a population of 150,000 persons or less: a facility with more than 100,000 square feet of gross floor area;
"(v) in a city, town or village having population of more than 150,000 persons: a facility with more than 240,000 square feet of gross floor area”.
The court has reviewed the record before it and concludes that the owners’ application does not constitute a Type I action on its face. Since the property in question is located in the A and R-3 zone which already allows for residential uses by definition, the apartment use does not fall within 6 NYCRR 617.12 (b) (2) (ii). It appears that the general vicinity is already residential in nature and the record fails to indicate how the subject parcel is presently used.
Likewise, there is no proof to support the contention that a project providing for the construction of more than 50 units is presently proposed. The application clearly states that it is for "one four unit apartment house”.
Finally, there is no proof to indicate that the project scope falls within the definition set forth in 6 NYCRR 617.12 (b) (6) since that section applies only to nonresidential facilities.
There is nothing contained in the minutes of the public hearings to indicate that the owners sought permission to construct anything more than one four-unit apartment building. The action of the Zoning Board approved that particular project only. It is clear that the Zoning Board acknowledged that a project of the size and scope which the petitioners allege will occur, would be subject to more stringent review.
Although the threshold for requiring SEQRA compliance is "relatively low” (Matter of Save the Pine Bush v Planning Bd., 96 AD2d 986), the court concludes that the Zoning Board appropriately considered relevant environmental concerns in evaluating this application prior to issuing the special permit (see, H.O.M.E.S. v New York State Urban Dev. Corp., 69 AD2d 222). The court finds that the decision of the Zoning Board not *525 to require SEQRA review of this application for a special use permit was not arbitrary, capricious or an abuse of discretion (Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 416). Since the application satisified the town’s area and frontage requirements for a special permit to allow the construction of an apartment building in an A and R-3 zone, the approval of the permit by the Zoning Board was properly granted.
The court need not address the owners’ argument that the issuance of a special use permit is a ministerial act which falls outside SEQRA’s review requirements.
The petition, accordingly, must be dismissed. Respondents to submit order, without costs.