[908 NYS2d 333]

In the Matter of JOHN CAMBIO, Petitioner, v RONALD GOLDSTOCK et al., as Commissioners of the Waterfront Commission of New York Harbor, Respondents.

Supreme Court, New York County, September 7, 2010

**APPEARANCES OF COUNSEL**

*Pitta & Giblin, LLP*, New York City, for petitioner.

**OPINION OF THE COURT**

JUDITH J. GISCHE, J.

Petitioner, John Cambio (Cambio) brings this CPLR article 78 proceeding, challenging the December 1, 2009 determination (determination) of the Waterfront Commission of New York Harbor, denying his request to be retained on the longshoremen's register. The respondents are each Commissioners of the Waterfront Commission of New York Harbor (collectively the Waterfront Commission). The Waterfront Commission has interposed an answer and also cross-moves to dismiss the petition based upon the expiration of the statute of limitations.

Cross Motion to Dismiss

The court first addresses the statute of limitations issue raised in the cross motion first, because the outcome directly impacts the scope of the remaining issues that would need to be considered. The parties each acknowledge that because this is an article 78 proceeding, it must be commenced "within four months after the determination to be reviewed becomes final and binding on the petitioner." (CPLR 217 [1].)

The Waterfront Commission argues that the determination was made on December 1, 2009 and that petitioner filed this

article 78 proceeding on April 5, 2010, four days too late. Cambio claims that while the determination is dated December 1, 2009, it was not certified as true and correct until December 3, 2009. It was then mailed to Cambio by the Waterfront Commission, via regular mail, in an envelope postmarked December 3, 2009. A copy of the envelope, with the dated postmark, is included as an exhibit to the petition. Cambio received the determination at his home on December 5, 2009. He was removed from the hiring system effective December 8, 2009.

The court finds that the petition is timely. In general, an agency determination becomes final and binding when the aggrieved party receives actual notice of the determination. (*Matter of Metropolitan Museum Historic Dist. Coalition v De Montebello*, 20 AD3d 28 [1st Dept 2005]; *90-92 Wadsworth Ave. Tenants Assn. v City of New York*, 227 AD2d 331 [1st Dept 1996].) The determination in this case was not mailed until December 3, 2009. Cambio's assertion that he did not actually receive the determination until December 5, 2009 is unrefuted and completely plausible given the date of mailing. Assuming that the four-month period expired on either Saturday, April 3, 2010 or Sunday, April 4, 2010, Cambio still timely filed on April 5, 2010, because it was the next business day following the day to file. (*Hoxsie v Zoning Bd. of Appeals of City of Saratoga Springs*, 129 Misc 2d 493 [Sup Ct, Saratoga County 1985].)

Consequently the cross motion to dismiss the petition is denied.

## The Petition

### (1) Standard of Review

An article 78 proceeding is a special proceeding. It may be summarily determined upon the pleadings, papers, and admissions to the extent that no triable issues of fact are raised. (CPLR 409 [b]; 7801, 7804 [h].) Thus, much like a motion for summary judgment, the court should decide the issues raised on the papers presented and grant judgment for the prevailing party, unless there is an issue of fact requiring a trial. (CPLR 7804 [h]; *Matter of York v McGuire*, 99 AD2d 1023 [1984], *affd* 63 NY2d 760 [1984]; *Matter of Battaglia v Schuler*, 60 AD2d 759 [4th Dept 1977].)

The applicable standard of review is whether the administrative decision was: (1) made in violation of lawful procedure; (2) affected by an error of law; or (3) arbitrary or capricious or an abuse of discretion, including whether the penalty imposed was

an abuse of discretion (CPLR 7803 [3]). An agency abuses its exercise of discretion if its administrative orders lack a rational basis. "[T]he proper test is whether there is a rational basis for the administrative orders, the review not being of determinations made after quasi-judicial hearings required by statute or law" (*Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County,* 34 NY2d 222, 231 [1974]; *see also Matter of Colton v Berman,* 21 NY2d 322, 329 [1967]).

(2) Summary of the Facts

The underlying facts in this case are not disputed. In 1953, the Waterfront Commission was established as a bistate agency charged with the obligation to investigate, deter, combat and remedy criminal activity and influence in the Port of New York and New Jersey and to ensure fair hiring and employment practices, so that the port region can grow and prosper. (*See generally* McKinney's Uncons Laws of NY § 9801 *et seq.*) It was established pursuant to the laws of both New York State and New Jersey and was approved by the Congress of the United States (Waterfront Commission Act or WCA, L 1953, ch 882, as amended [NY Uncons Laws § 9801 *et seq.*]; 1953 NJ Laws, ch 202, codified at NJ Stat Ann § 32:23-1 *et seq.*; Pub L 252, ch 407 [83rd Cong, 1st Sess]).

Of particular concern for the Waterfront Commission was eradicating corruption that had been attendant to unfair labor practices involving longshoremen. The "depressing and degrading" practices in place, before the Waterfront Commission was created, were partly due to an overabundant supply of labor, beyond industry demands. (Uncons Laws § 9802 [WCA sec 1, art I, § 1]; *see* Sponsor's Mem, L 1997, ch 322, reprinted in 1997 McKinney's Session Laws of NY, at 2309.) Consequently, one of the Waterfront Commission's express statutory mandates is to bring the number of eligible longshoremen more closely into balance with the demand for longshoremen's services. (Uncons Laws § 9836 [b] [WCA sec 1, art IX, § 3 (b)]; *see also* Uncons Laws §§ 9834, 9835 [WCA sec 1, art IX, §§ 1, 2].)

In furtherance thereof, the Waterfront Commission is directed to maintain a register of persons eligible to work as longshoremen. (Uncons Laws § 9827 [WCA sec 1, art VIII, § 1].) Only workers on the list may be hired to work in the New York harbor. The WCA also expressly requires the Waterfront Commission to remove names from the register of any person who failed to work or apply for work during six-month intervals for

a minimum number of days that are established by the Commission. (Uncons Laws § 9834 [WCA sec 1, art IX, § 1].) Removal from the register is called "decasualization." In fixing the minimum work requirements the Waterfront Commission is statutorily directed to observe the following standards:

> "(a) To encourage as far as practicable the regularization of the employment of longshoremen;

> "(b) To bring the number of longshoremen more closely into balance with the demand for longshoremen's services within the port of New York district without reducing the number of eligible longshoreman below that necessary to meet the requirements of longshoremen in the Port of New York district:

> "(c) To eliminate oppressive and evil hiring practices affecting longshoremen and waterborne commerce in the port of New York district;

> "(d) To eliminate unlawful practices injurious to waterfront labor; and

> "(e) To establish hiring practices and conditions which will permit the termination of governmental regulation and intervention at the earliest opportunity." (Uncons Laws § 9836 [WCA sec 1, art IX, § 3].)

Pursuant to the WCA, the Waterfront Commission adopted rules and regulations, which provide in pertinent part:

> "To qualify for retention in the commission's 'deep-sea' register, a person included in such register must work as a longshoreman or as a checker, or make himself available for work . . . a minimum of 90 days in each half-calendar year, distributed at least 15 days to each month during at least five of the six months in each half-calendar year." (21 NYCRR 8.1 [a].)

Unconsolidated Laws § 9837 (WCA sec 1, art IX, § 4) provides, however, that a longshoreman who has been removed from the register based on failure to fulfill the minimum work requirements may be reinstated as follows:

> "[I]mmediate reinstatement shall be made upon a proper showing that the registrant's failure to work or apply for work the minimum number of days above described was caused by the fact that the registrant was engaged in the military service of the Untied States or was incapacitated by ill health, physical injury, or other good cause."

Cambio was a "checker," a position which qualifies as a longshoreman for purposes of the register. As a checker, Cambio's employment duties generally included receiving, storing, documenting and setting up for loading bulk cargo both onto and off vessels. He also dealt with United States Customs regarding inspection of imported and exported cargo. He had been listed on the register since in or about 2003. For the period beginning January 1, 2009 and ending June 30, 2009, Cambio was credited for a total of 91 days. In three of those months (February, March and April 2009), however, he worked less than the 15-day minimum. In April 2009, however, he was given five days' credit for vacation pay. In each of February and March 2009, he worked 14 days, one day less than the minimum required to remain on the register.

Consequently, by letter dated August 5, 2009 Cambio was notified by the Waterfront Commission that he had failed to meet the requirements for work or applying for work as a checker for the period beginning January 1, 2009 and ending June 30, 2009.

On September 8, 2009 Cambio submitted a request for retention on the longshoremen's register. The basis for the request was that as a result of some unforseen disputes with his business partner, he undertook additional responsibilities at a restaurant business he owned outside of his work in the harbor. Cambio also claimed that he should be credited with all holidays as work days. Had he been credited with that time, he would have qualified for continuation on the registry.

On December 1, 2009 the Waterfront Commission made the determination which states in relevant part:

> "The Commission having duly determined that the said JOHN CAMBIO, did not meet the work and work availability requirements for the six month period beginning January 1, 2009 and ending June 30, 2009, and that his failure to meet said requirements did not result from 'good cause' within the meaning of the Waterfront Commission Act, in that JOHN CAMBIO failed to meet the work or work availability requirements due to his employment outside of the industry, to wit: as co-owner and president of 101 Food Corporation A/K/A Lai Yuen; and as owner and president of New York Pro Finish, Inc.; and as owner and president of 355 Court Street Bakery Corporation, A/K/A Monteleone's Bakery

and Café; and the Commission having duly determined that the request of JOHN CAMBIO for Retention on the Longshoremen's Register should be denied; it is ORDERED: That the request of JOHN CAMBIO for Retention on the Longshoremen's Register be, and it hereby is, denied."

(3) Discussion

■ In this proceeding Cambio raises two arguments about why the determination denying him reinstatement was arbitrary, capricious and without rational basis. First, he claims that the Waterfront Commission should have counted his holiday pay in calculating his work service. There is no dispute that if holiday pay is counted, Cambio meets the work requirements required to maintain continued eligibility on the register. Second, Cambio claims that the Waterfront Commission decision that employment outside the industry was not "good cause" to reinstate Cambio lacked a rational basis.

The Waterfront Commission argues that it does not count holiday pay for any longshoremen in determining eligibility and that its decision not to do so is neither arbitrary nor capricious. Further it argues that because one of its stated goals is to eliminate casual workers from the register, its decision that Cambio's employment responsibilities outside of the industry do not constitute good cause was rational.

Under the Collective Bargaining Agreement (CBA) Cambio was entitled to receive holiday pay. This holiday pay is paid to Cambio regardless of whether he actually works or not on the particular holiday. Some of the holidays for which longshoremen are paid are considered "working" holidays, on which they can receive wages on top of holiday pay. At bar, while Cambio collected holiday pay for Lincoln's Birthday (February 12, 2009), Presidents' Day (February 15, 2009) and Gleason's birthday (March 17, 2009), it is undisputed that he could also have, but did not actually work on these days.

According to the Waterfront Commission Act, the Waterfront Commission is required to "count as actual work the compensation received by any longshoreman pursuant to the guaranteed wage provisions of any collective bargaining agreement relating to longshoremen." (Uncons Laws § 9907 [1] [WCA § 5-c (1)].) Cambio argues that because holiday pay is guaranteed under the CBA, the Waterfront Commission was required to count it toward meeting minimum work requirements. The Waterfront Commission argues, however, that the statutory reference to

counting service for compensation under the "guaranteed wage provisions" in a collective bargaining agreement specifically refers to particular contractual paragraphs that provide guaranteed payments compensating longshoremen who lost hours of labor as a consequence of the introduction of container technology to the piers in 1960 (*id.*). It is a direct reference to what is known in the industry as the Guaranteed Annual Income (GAI) program. No payments under the GAI program have been made for almost 10 years. Thus, the Waterfront Commission interprets and correlates the requirement to count toward the minimum working requirements, compensation received on account of CBA article XVIII, titled "Income Guarantee." It does interpret Unconsolidated Laws § 9907 (WCA § 5-c) to apply to holiday pay.

Judicial deference to an agency's interpretation of statutes and regulations is owed when specialized knowledge and understanding of underlying operational practices or an evaluation of factual data, with inferences to be drawn therefrom, is at stake. (*Roberts v Tishman Speyer Props., LP*, 13 NY3d 270 [2009].) In this case, the interpretation of the Waterfront Commission Act cannot be separated from the historical context in which the laws and amendments were passed. GAI is a specific type of guaranteed income. The interplay of GAI and its effect on the longshoremen's register and the supply of workers is a complicated one. (*See* Sponsor's Mem, L 1997, ch 322, reprinted in 1997 McKinney's Session Laws of NY, at 2309.) The Waterfront Commission's interpretation of the WCA, that the reference to the "guaranteed wage" provision in the Waterfront Commission Act is a term of art related only to the GAI provisions, reflects specialized knowledge and understanding of the operational practices of labor relations in the harbor. It should be upheld. Thus, the decision by the Waterfront Commission not to count holiday pay toward work requirement minimums does not violate Unconsolidated Laws § 9907 (WCA § 5-c).

The court otherwise holds that the policy decision by the Waterfront Commission not to credit holiday pay toward register eligibility is neither arbitrary nor capricious. The purpose of the register is to have a list of longshoremen who are able and available for work. The decision not to give credit for days that a longshoreman could, but does not actually work (for whatever reason), is consistent with maintaining a registry of only available workers and weeding out the casual laborers.

Nor does the fact that the Waterfront Commission credits vacation pay as service in connection with maintaining register

eligibility render the decision not to credit holiday pay arbitrary and capricious. Vacations under the CBA are mandatory (with rare exception) and they do not correlate with a worker making himself unavailable for work. In addition, because vacations, unlike holidays, are not taken at a uniform time, they do not adversely affect the supply of labor. Thus, as a matter of public policy, the Waterfront Commission credits all longshoremen for vacation pay.

Nor does the fact that the Waterfront Commission, in its discretion, lowered the minimum requirement for subsequent periods of time make its determination in this case arbitrary and capricious. The subsequent adjustments, lowering the minimum service requirements for later time periods, were made for reasons consistent with the Waterfront Commission's mandate. Adjustments are made because supply and demand of labor on the waterfront changes over time. Unconsolidated Laws §. 9835 (WCA sec 1, art IX, § 2) contemplates that the Waterfront Commission shall have the flexibility to change the minimum work requirements every six months. The fact that the Waterfront Commission made the service requirements easier to meet at different periods of time does not mean that Cambio, or any other longshoreman, was free to disregard the service requirements in place during the relevant period of time.

Cambio was decasualized because he did not meet the work/available for work requirements at the specific time period in question. Reinstatement could only be achieved by a showing of "good cause." At bar, it is undisputed that Cambio's outside business commitments were the sole reason he was unable to meet the minimum work requirements. One of the mandates of the Waterfront Commission is to ensure a fair balance of supply and demand of longshoremen to work at the ports of New York harbor. It created the minimum working requirement to eliminate casual workers from the register, while otherwise retaining those workers who were available to do the work. The Waterfront Commission's determination of no "good cause" is predicated on the conclusion that commitments to outside employment, which prevent a longshoreman from meeting the work requirements at the pier, are inconsistent with its mandate to eliminate "casual" workers from the register. This conclusion has a rational basis.

Conclusion

In accordance herewith it is hereby ordered and adjudged that the article 78 petition is hereby dismissed with prejudice,

and it is further ordered that the cross motion to dismiss the petition as being untimely is denied, and it is further ordered that any requested relief not otherwise expressly granted herein is denied.