Jasen, J.
In this article 78 proceeding to review the determination of New York City Board of Standards and Appeals denying request to reopen and reconsider grant of variance to construct a six-story multiple dwelling, two questions are presented for our review. First, whether a civic or property owners ’ association has standing to contest the grant of the variance, and, second, whether the belated discovery of evidence which was at all times available may constitute such “ substantial new evidence ” as to make the board’s refusal to reopen and reconsider its prior action arbitrary and capricious.
On July 20, 1971, the board, following a hearing at which Douglaston residents individually and through the Douglaston Civic Association, Inc., opposed the variance, granted the estate of Dave Simon a hardship variance, permitting it to construct a six-story, 67-unit apartment building in an area zoned Rl-2, which essentially limited construction to single homes on 60-foot plots. In its presentation to the board, the estate had represented its “ Cost of Land ” as $121,878[1]. In support of its claim that the cost of construction of a single dwelling on the site would be prohibitive, the estate provided the board with estimated rates of return from various residential uses of the property, ranging from 3.83% for five three-family dwellings to 6.9% for a six-story apartment house. Upon this evidence, the board granted the estate a variance based on hardship. Neither the association nor the individual petitioners herein sought judicial review of the board’s action in granting the variance.
Shortly after the time in which they could contest the grant of the variance had expired, but before any construction had begun, the petitioners discovered for the first time that eight years earlier, in a New York estate tax proceeding, this same parcel in its identical unimproved state had been valued by the *5 estate at $35,000. Although this had .been a matter of public record for three years, the association asked the board to reopen the case and grant a rehearing. The board refused on the ground that this recently discovered information did not constitute substantial new evidence. At that point the individual petitioners joined the association in initiating this proceeding pursuant to section 668&-1.0 of the New York City Administrative Code and CPLE article 78 seeking a review of the board’s denial of a rehearing. Special Term denied the board’s motion to dismiss the petition and ordered it to serve an answer. The Appellate Division reversed, holding, inter alia, that the Douglaston Civic Association lacked standing to bring the proceeding; that as to the individual petitioners who were “ aggrieved ” by the board’s decision, “ the board acted well within its discretionary power in rejecting such information and in apparently concluding that a projected return of income for a parcel for which a variance is sought may be 'based on present value, rather than its original cost ’ ’; and that the valuation information did not constitute substantial new evidence. (43 AD 2d 739, 740.)
Considering first the standing issue, subdivision a of section 668e-1.0 of the New York City Administrative Code provides that “ [a]ny person or persons, jointly or severally aggrieved by any decision of the board ” may challenge that decision in an article 78 proceeding in the nature of certiorari.[2]
Our courts have repeatedly held that for a person[3] to be “ aggrieved ” within the meaning of the provision, there must be a showing that the person has been personally and adversely affected by the administrative determination. (Matter of Manor Woods Assn. v. Randol, 29 A D 2d 778; Matter of Moore v. Burchell, 14 A D 2d 572, mot. for lv. to app. den. 10 N Y 2d 709; Matter of Lido Beach Civic Assn. v. Board of Zoning Appeals, 13 A D 2d 1030; Matter of Feldman v. Nassau Shores Estate, *6 12 Misc 2d 607, affd. 7 A D 2d 757; Matter of Vitolo v. Chave, 63 Misc 2d 971; Matter of Miller v. Incorporated Vil. of East Hills, 41 Misc 2d 525.) Obviously, under this restrictive view, civic and property owners’ associations with no direct proprb etary. interest in the zoned land would have no standing to challenge a zoning board decision.
We are troubled by the apparent readiness of our courts in zoning litigation to dispose of disputes over land use on questions of standing without reaching the merits, an attribute which is glaringly inconsistent with the broadening rules of standing in related fields. (See, e.g., National Organization for Women v. State Div. of Human Rights, 34 N Y 2d 416; Matter of Glen Cove Civ. Serv. Comm. v. Glen Cove NAACP, 34 A D 2d 956; Matter of American Jewish Congress v. Carter, 19 Misc 2d 205, mod. on other grounds 10 A D 2d 833, affd. 9 N Y 2d 223; Ayer, Primitive Law of Standing in Land Use Disputes: Some Notes Prom a Dark Continent, 55 Iowa L. Rev. 344.) Troubled though we are over this inconsistency that has developed in our law, our concern is heightened because of the particular need in zoning cases for a broader rule of standing.
It should be readily apparent that a person desiring relaxation of zoning restrictions — such as a change from residential to business — has little to lose and much to gain if he can prevail. He is not reluctant to spend money in retaining special counsel and real estate appraisers if it will bring him the desired result. The individual owner of developed land in the neighborhood, on the other hand, may not, at the time, realize the impact the proposed change of zoning will have on his property, or, realizing the effect, may not have the financial resources to effectively oppose the proposed change. Thus, the neighboring property owners rarely fight as hard for zoning protection as the developer or speculator does for relaxation of zoning restrictions. Against this background of economic disparity, an individual property owner, who stands only to gain (or prevent the loss of) the maintenance of the status quo as regards the value of his homestead and his peace and quiet, cannot be expected, nor should he be required, to assume by himself the burden and expense of challenging the zoning change. Even if successful, the aggrieved individual will not be able to recoup his expenditures. By granting neighborhood and civic associ *7 ations standing in such situations, the expense can be spread out over a number of property owners, putting them on an economic parity with the developer.
This broader rule of standing is entirely consistent with the underlying purposes of our zoning laws. Our municipalities enact zoning ordinances in order to protect the public’s health, welfare and safety. A challenge to a zoning variance focuses the court’s attention on this public interest. To force a court to reject such a challenge on the grounds of standing when the group contesting the variance represents that segment of the public which stands to be most severely affected by it is, in our view, an ironic situation which should not be permitted to continue.
In view of these factors, we believe that an appropriate representative association should have standing to assert rights of the individual members of the association where such persons may be affected by a rezoning, variance or an exception determination of a zoning board.
In determining whether a particular organization should have such standing, the court should be satisfied that the organization before it is an appropriate one to act as the representative of the group whose rights it is asserting. Several of the factors[4] which should be considered in this respect were set forth in Justice Hopkins’ concurring opinion at the Appellate Division — “ (1) the capacity of the organization to assume an adversary position, (2) the size and composition of the organization as reflecting a position fairly representative of the community or interests which it seeks to protect and (3) the adverse effect of the decision sought to be reviewed on the group represented by the organization as within the zone of interests sought to be protected.” (43 A D 2d 739, 740.) To these factors we would add that full participating membership in the representative organization be open to all residents and property owners in the relevant neighborhood. (Cf. A. L. I., Model Land Development Code, Proposed Official Draft No. 1 [1974], § 2-307, subd. *8 [3], par. [e].)[5] Applying these factors in determining standing would, in our view, insure that the necessary adverseness is present for litigation of the issues raised by the petition and that the petitioner is not a mere intermeddler in the administrative process.
We conclude, on the record before us, that the association satisfies the criteria for standing. Its size and composition — over 1,000 owners and residents in the immediate vicinity of the area involved in the grant of the variance — establishes its ability to undertake an adversary position and to adequately represent the “ aggrieved ” neighborhood members of the organization. That the effect of the variance is within the zone of interests to be protected can hardly be questioned. Thus, the association qualifies as a bona fide representative of those residents and property owners whose property may be affected by the grant of the variance, and should have standing to challenge the determination of the zoning board.
We reach this result simply in recognition of the modern day fact of life that participation by neighborhood groups in land use decisions has grown from the exception to the rule. While often informal and disorganized, it is a practice that needs to be encouraged lest a neighborhood become “ niekel-and-dimed ” to death by gas stations, beauty parlors, taverns and the like. (Cf. A. L. I., Model Land Development Code, Tentative Draft No. 2 [1970], § 2-307, Note, p. 72.)
Holding as we do, as a threshold proposition, that the Douglaston Civic Association is an “ aggrieved person ” and has standing, we, nevertheless, on the merits, affirm the decision below. Subdivision 4 of article IV of the Rules of Procedure of the Board of Standards and Appeals provides that “ [n]o request for a re-hearing will be granted unless substantial new evidence is submitted ”. The rationale behind the rule was enunciated over a century ago: ‘ ‘ There must be a point at which to stop. If it can be reviewed the next day, it can the next week, *9 month or year ”. (People ex rel. Thomson v. Board of Supervisors of County of Schenectady, 35 Barb. 408, 418; see, also, Matter of 200 West 79th St. Co. v. Galvin, 71 Misc 2d 190.) Testimony which was as available before the hearing as it was at the time of the application is not newly discovered evidence. This information had been a matter of public record for three years prior to the original hearing; with reasonable diligence it could have been obtained for use at the hearing. (See Collins v. Central Trust Co., 226 App. Div. 486.) This is not a case where the board’s decision was 'based on facts fraudulently misrepresented to it; the presentation made it clear that the “ Cost of Land ” figure represented its current value and not its actual cost. Accordingly, we agree that no “ substantial new evidence ” was presented to the board, and its refusal to reopen the proceeding was not arbitrary and capricious.
We would merely add that in affirming the decision below we do not intend to imply our approval of the Appellate Division’s statement that the board acted correctly ‘ ‘ in apparently concluding that a projected return of income, for a parcel for which a variance is sought, may be based on present value, rather than its original cost.” (43 A D 2d 739, 740.) While present value most often will be the relevant basis from which the rate of return is to be calculated, it is important that the “ present value ” used be the value of parcel as presently zoned, and not the value that the parcel would have if the variance were granted. While the record does not speak to this point, we suspect that the $121,000 figure here represents the value the parcel would have if granted the variance. Neither do we think that Matter of Crossroads Recreation v. Broz (4 N Y 2d 39) fairly supports that statement as suggested by the Appellate Division. Our intention in Crossroads was simply to reaffirm the rule that the proper inquiry is whether the presently permitted use can yield a reasonable return, even if not the most profitable return. (4 N Y 2d, at p. 46.) We would note further that the original cost becomes relevant where, despite the prohibition upon converting the land to another use, the land has nevertheless appreciated significantly to the extent that the owner may have suffered little or no hardship. (See Matter of Jayne Estates v. Raynor, 22 N Y 2d 417, 421-422.)
*10 Accordingly, the order of the Appellate Division should be affirmed, without costs.
Chief Judge Breitel and Judges Gabrielli, Jones, Wachtler and Stevens concur; Judge Rabin taking no part.
Order affirmed.

. “ Cost of Land ” was computed on the basis of 27,084 square feet at $4.50 per square foot. Land cost per square foot was estimated from the price of three comparable parcels of property in the immediate area, one on Manhattan Parkway and two on Northern Boulevard, all within one-half mile of the premises. There is no indication in the record as to the zoning classifications of these "comparable” pieces of property.

. This “ any person or persons, jointly or severally aggrieved ” standing test is found in numerous zoning statutes/including Village Law (§ 7-712, subd. 3), General City Law (§§ 38, 82) and Town Law (§ 267, subd. 7; § 282). Our holding today applies equally to these and other similar zoning provisions.

. We note in passing that section 37 of the General Construction Law states that the term “ person ” includes corporations.

. While outlining these factors, we are mindful of the desirability of having such standards enunciated by the Legislature. Accordingly, we invite the Legislature’s attention to A. L. I., Model Land Development Code (Proposed Official Draft No. 1 [1974], § 2-307, and Appendix A [1974], §§ 9-103, 9-104, 10-102).

. We are particularly intrigued with the schema proposed by the A. L. I. which avoids the use of the term “ aggrieved person ” and, thus, obviates the need for frequent litigation of this often perplexing question. (See A. L. I., Model Land Development Code, Tentative Draft No. 3, [1971], § 9-103, Note, pp. 106-107, and Tentative Draft No. 4 [1972], § 10-102, Note, pp. 29-30.)