*203 OPINION OF THE COURT

Per Curiam.

This appeal presents once again the question, considered by us in Incorporated Vil. of Brookville v Paulgene Realty Corp. (11 NY2d 672) whether a summer program run by a private school is to be classified for zoning purposes as a day camp. We conclude that the Woodmere Academy summer program, like that of the Robin Hood Country Day School considered in Paulgene, is a permitted use.
Plaintiffs, neighboring property owners of Woodmere Academy, brought action in May, 1978 to enjoin the academy’s proposed use during the summer of 1978, on the ground that the proposed program was a day camp rather than a school, and as such not a use permitted by the zoning ordinance. In a second cause of action they sought to enjoin the proposed summer program as a nuisance. After a trial before Justice Frank X. Altimari, he held that the program was a permitted use under the zoning ordinance and granted judgment dismissing the complaint, without prejudice to the later institution of any action to enjoin a nuisance should the program when it got under way prove to warrant plaintiffs’ so doing.
On appeal to the Appellate Division, that court reversed (70 AD2d 908), finding that the academic aspects of the curriculum at the proposed summer school were de minimis, but remitted the matter for further hearing on the question whether there had been an abandonment by the academy of its prior nonconforming summer day camp use. After trial of that issue before Justice Thomas P. Farley, he again dismissed the complaint “on the ground that defendant has the right to conduct a summer day camp as a legal nonconforming use.” From that final judgment, defendant academy appealed directly to us pursuant to CPLR 5601 (subd [d]) in an attempt to bring up the prior nonfinal order of the Appellate Division, and plaintiffs cross-appealed. We dismissed the academy’s appeal on the ground that it was not aggrieved and the plaintiffs cross-appeal on the ground that they had an appeal from Justice Farley’s judgment pending in the Appellate Division (48 NY2d *204 753). Defendant’s motion to vacate our order dismissing its CPLR 5601 (subd [d]) appeal was denied (48 NY2d 962).
On plaintiffs’ appeal of Justice Farley’s judgment to the Appellate Division, that court affirmed, one Justice dissenting. Plaintiffs then appealed to our court and defendant academy cross-appealed.
Defendant’s cross appeal must be dismissed because, the complaint having been dismissed, the academy is not a party aggrieved (see CPLR 5511). Nevertheless, plaintiffs’ appeal from the Appellate Division order affirming Justice Farley’s final judgment brings up for review all prior nonfinal orders necessarily affecting the final judgment, including the order of the Appellate Division reversing the earlier order of dismissal granted by Justice Altimari (CPLR 5501, subd [a], par 1; 7 Weinstein-Korn-Miller, NY Civ Prac, par 5511.06, pp.55-75).
We consider first whether the program is a permitted use under the ordinance, for if it is the question of nonconforming use becomes moot. In that consideration we review not only questions of law but also, in view of the differing factual conclusions reached by Special Term and the Appellate Division, we determine “which decision is conformable with the weight of evidence” (Matter of City of New York [Coogan], 20 NY2d 618, 623; accord People ex rel. MacCracken v Miller, 291 NY 55, 61; see CPLR 5501, subd [b]). On the evidence and the applicable law we conclude that the summer program is a permitted use.
Under the Town of Hempstead ordinance a private school is a permitted use in the zoning district (Residence A) in which the academy is located (§ A-1.3, subd [a]), but a day camp is a special exception use in a business district (§ Z-5.0, subd [c], par 13) and not permitted at all in a Residence A district. Plaintiffs rely heavily on the definition of “private school” contained in article 16 of the ordinance, which establishes area and other requirements for private schools. Subdivision (a) of section SP-1.2 defines a private school as “all schools other than public devoted to academic instruction of any grade level through and including the elementary level.” From that definition plaintiffs argue that to be a permitted use the program conducted at the academy during the summer must be one *205 of “academic instruction”, and that the holding of Incorporated Vil. of Brookville v Paulgene Realty Corp. (24 Misc 2d 790, affd 14 AD2d 575, affd 11 NY2d 672, supra) does not apply in light of the private school definition in the ordinance. Paulgene held the summer program run on the grounds of the private school there involved permissible under the Brookville zoning ordinance because it had the three prime requisites of a school: “a curriculum, a plant consisting of adequate physical facilities, and a qualified staff to carry into effect its educational objectives.” (24 Misc 2d, at p 792.)
Plaintiffs’ argument proves too much. Carried to its logical extreme it would outlaw any program during the summer that did not exactly duplicate the school’s September to June curriculum as to proportions of intellectual and physical stimulus. The definition in the ordinance is not so stringent. It does not require that a private school be devoted solely to academic instruction, nor indeed does it by use of the words “devoted to academic instruction” exclude entirely from the type of instruction that may be offered between September and June all phases of physical training and instruction.
Not to be lost sight of is the fact, which no one disputes, that the academy is a private school within the meaning of the zoning law. The question then is not whether, considering only the summer program, it is a permitted use, but rather how far a private school summer program may deviate from its September to June curriculum before it functions not as a private school but as a day camp and, therefore, beyond what the zoning ordinance allows. Important in determining that issue is, as Paulgene suggests, whether a substantial part of the summer program is devoted to subjects which are also part of the regular school curriculum, and whether there is a staff qualified and a plant sufficient to instruct in those subjects.
The fact that some of the activities carried on may also be carried on by a day camp, or for insurance or public health purposes may be classifiable as day camp activities, is not determinative, nor is it decisive that during the same summer period the plant is being or could be used for a summer school in the traditional sense (i.e., a school de *206 voted entirely to academic subjects). What is essential is that the educational component of the program, the staff and the plant be of sufficient size to warrant the conclusion that the program involves a good faith effort on the part of the private school to accomplish serious educational aims and is not simply a fun and games recreational program in disguise.
Reviewing the evidence, we conclude that the weight of the evidence sustains Special Term’s holding, rather than that of the Appellate Division. The curriculum offered by the summer program included courses in science, music, drama and dance, art, photography, reading, cooking, woodworking and swimming, all of which except swimming were offered as part of the September to June program. Summer program students who desired it could also obtain tutoring in mathematics and reading. The plant available for the summer program was the same as used in the September to June program except that the academy had no swimming pool prior to the reinstitution of the summer day program in 1978.
Of the total staff of 70 engaged in the 1978 summer program, 22 were professionally trained teachers, one was a psychologist, one a registered nurse, three were graduate medical students and the remainder were college students employed as counselors or counselors in training. The director of the summer program, a qualified teacher holding a graduate degree, was the assistant head master of the academy. The director of the art course, a certified teacher holding graduate degrees and who had taught art at Lawrence High School for the past 10 years, testified in detail concerning the curriculum she had planned for the course, which she made clear differed from the program offered by most day camps, encompassed everything done in the regular art program at Lawrence High and would entitle students in the academy summer program to credit toward a junior high or high school diploma. The science instructor, who is also adjunct teacher in biology in the academy’s regular program, is professor of biology at the City University of New York and holds graduate degrees. He described in detail the curriculum planned for different age groups and testified that he had available for use in the course a *207 fully equipped biology laboratory and a greenhouse for botanical studies and that the summer biology program would be similar to the instruction given the group he instructed in the academy’s September to June program. The director of the summer music program, a certified teacher of instrumental music, holder of a graduate degree, testified concerning the instrumental and choral instruction he had planned for the summer program, that it was conducted in a manner similar to the instruction he gave at Roslyn High, and that it would entitle a participant in the course to credit at public high school. None of that testimony was called into serious question by either cross-examination or plaintiffs’ evidence.
To the foregoing indicia of an educational rather than recreational program can be added the fact that textbooks used in the summer program courses were introduced, the fact that summer program students are evaluated in performance of the subjects taken and a report on that performance is made to their parents, and the expert opinion of an associate professor of education at Adelphi University who testified that the same educational focus ran through both the summer program and the September to June program, and that the summer program was “a serious organized program with a philosophy, not something that is put together to fill kids’ leisure hours.”
It is necessary to add only that we have examined the cases relied upon by plaintiffs in support of their argument that the use is not permitted and find them distinguishable.
The order of the Appellate Division dismissing the complaint should be affirmed, with costs, but on the ground that the use sought to be enjoined is a permitted use, rather than, as adjudged in the judgment of July 11, 1979, that it is a legal nonconforming use. For the reason stated above, the academy’s cross appeal is, however, dismissed.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Meyer concur in Per Curiam opinion.
On plaintiffs’ appeal: Order affirmed, with costs.
On defendant’s cross appeal: Appeal dismissed, without costs.