OPINION OF THE COURT
Edward H. Lehner, J.
Motions No. 150 and 184 of October 6, 1981 are hereby consolidated for disposition.
These motions raise the issue, on which there is no direct authority, as to whether a local community board in the City of New York has standing to judicially challenge the grant of a zoning variance.
The petitioner, Community Board No. 4, brings this article 78 proceeding to annul the decision of the Board of Estimate which affirmed the grant of a zoning variance by the Board of Standards and Appeals (BSA) permitting a conversion of space to residential use in an otherwise commercial area. The respondents cross-move pursuant to CPLR 7804 (subd [f]) for dismissal upon the ground that the petitioner lacks standing.
There is also a motion from 25 Building Associates, the partnership which received the zoning variance, for permission to intervene as a respondent, and to dismiss the petition based on the same claim as that of the respondents.
*1006 The motion by 25 Building Associates to intervene is granted. CPLR 7802 (subd [d]) requires only that the intervener be “interested”, to be allowed to intervene. Clearly 25 Building Associates, as the holder of the zoning variance, is beneficially interested in whether the variance is annulled or upheld.
On the question of standing, section 668e-1.0 of the Administrative Code of the City of New York grants judicial review of decisions of the BSA to persons “aggrieved” thereby.
Respondents argue that since the statute creating the community boards does not specifically authorize the boards to judicially challenge the grant of zoning variances, such power does not exist and in support of that position cite Community Planning Bd. No. 2 of Borough of Manhattan v Board of Stds. & Appeals (43 AD2d 670). In that case, although the Community Planning Board was permitted to appear amicus curiae, it was found not to have status to petition for review.
I find that such case is no longer controlling in light of the New York City Charter revision approved by the voters in 1975 and the Court of Appeals decision in Matter of Douglaston Civic Assn. v Galvin (36 NY2d 1).
In Douglaston (supra, pp 6-7) the court significantly liberalized the rules relating to standing stating:
“We are troubled by the apparent readiness of our courts in zoning litigation to dispose of disputes over land use on questions of standing without reaching the merits, an attribute which is glaringly inconsistent with the broadening rules of standing in related fields. *** Troubled though we are over this inconsistency that has developed in our law, our concern is heightened because of the particular need in zoning cases for a broader rule of standing. * * *
“This broader rule of standing is entirely consistent with the underlying purposes of our zoning laws. Our municipalities enact zoning ordinances in order to protect the public’s health, welfare and safety: A challenge to a zoning variance focuses the court’s attention on this public interest. To force a court to reject such a challenge oh the *1007 grounds of standing when the group contesting the variance represents that segment of the public which stands to be most severely affected by it is, in our view, an ironic situation which should not be permitted to continue.”
The court went on to hold that in order to have standing to contest a zoning variance, a particular organization must establish that it “is an appropriate one to act as the representative of the group whose rights it is asserting.” (Matter of Douglaston Civic Assn. v Galvin, supra, p 7.) In this regard the factors that “should be considered” were announced to be (1) the capacity to assume an adversary position; (2) size and composition reflecting a position representative of the community; (3) the adverse effect of the decision sought to be reviewed on the group represented by the organization as within the zone of interests sought to be protected; and (4) that full participating membership should be open to all residents of the neighborhood.
Respondents argue that applying such factors petitioner still does not meet the criteria to establish standing because (1) the New York City Charter doesn’t confer authority on the communitxr boards to assume an adversary position and (2) full participation is not open to all residents.
Since by reason of the 1975 revision, subdivision 9 of section 666 of the New York City Charter specifically authorizes community boards to appear and argue before the BSA on zoning matters and subdivision c of section 668 authorizes the boards to appeal decisions of the BSA to the Board of Estimate, it is clear that community boards are no longer merely advisory bodies and hence satisfy the criteria of being able to take adversary positions.
With regard to the full participation criteria, all residents of a neighborhood are eligible to become members of its community board. However, only 50 persons appointed by the borough president may be voting members (NY City Charter, § 2800, subd a), although nonmembers may serve on committees (NY City Charter, § 2800, subd i).
Although it may appear that the literal language of the Douglaston case on this criteria may not be satisfied be *1008 cause every resident cannot be “a full participating member” of the board, this does not mean that community boards do not satisfy the guidelines of that case. The Court of Appeals was not setting forth hard and fast rules to establish standing, but rather was stating factors “which should be considered.” The court there had to determine whether a neighborhood association was a proper body to represent those united in interest against the determination being reviewed. When dealing with a community board, which is statutorily designated to represent the community in land use questions, the issue as to whether it is an appropriate body to represent a community position does not have the same uncertainty. Of course, a community board, which encompasses a large area, may not have the same position as a block association consisting of persons residing in the vicinity of the property affected. But the possibility of different positions from other groups because different areas or interests are represented should not affect the issue of standing.
In view of the philosophy of the court in Douglaston (supra, pp 7, 8) to grant standing to a representative organization that will “focus *** the court’s attention” on an administrative decision altering a law enacted “to protect the public’s health, welfare and safety”, which organization will “insure * * * adverseness” and not be “a mere intermeddler”, I find that community boards have standing to seek judicial review of decisions relating to zoning variances.
Furthermore, I find that the 1975 New York City Charter amendments statutorily gave standing in such cases to these boards, which right may have been lacking previously.
By various provisions added by the 1975 charter amendment, significant functions in land use were granted to these boards. Section 201 of the New York City Charter authorized the boards to apply for zoning changes, section 197-a of the New York City Charter provides that they may initiate plans for the “development, growth, and improvement of the city”, and section 197-c of the New York City Charter grants them participation in the uniform *1009 land use review procedure. These are all functions that did not exist prior to the charter revision.
Further, as indicated above, under subdivision c of section 668 of the New York City Charter the boards may appeal a decision of, the BSA to the Board of Estimate. Subdivision d of section 668 of the New York City Charter then provides that any decision of the BSA or the Board of Estimate “may be reviewed as provided by law.” Such review is pecessarily an article 78 proceeding. (Matter of Cotroneo v Klein, 62 AD2d 493.) In light of (1) the authorization to appear and argue before both the BSA and the Board of Estimate, (2) the goal of the framers of the new charter which (as seen from the various provisions referred to herein) was to give neighborhoods real participation in land use decisions through their community boards, and (3) the lack of any charter language limiting the right to judicial review, I hold that under the charter the petitioner is an aggrieved party entitled to institute this proceeding under subdivision d of section 668.
The Corporation Counsel’s argument, under the doctrine of expressio unius est exclusio alterius, that because the City Planning Commission (CPC) is specifically authorized under subdivision e of section 668 of the New York City Charter to institute an article 78 proceeding to review such determinations, community boards lack such authority, I find to be without merit. Said subdivision is one that deals exclusively with powers of the CPC. It is that subdivision in which the CPC is given (amongst other functions) the authority to appeal BSA decisions to the Board of Estimate. Such power with respect to community boards is contained in subdivision c of section 668 of the New York City Charter. In light of the arrangement of section 668, the grant in subdivision e of section 668 of the right of the CPC to seek article 78 review should not be taken as a denial of the right to judicial review of determinations of the Board of Estimate resulting from appeals taken under subdivision c of section 668.
The respondents’ and intervener’s cross motions to dismiss the petition are denied. Pursuant to CPLR 7804 (subd [f]) the respondents shall be permitted to answer the petition within five days after service of the order to be entered *1010 hereon with notice of entry and the petitioner may renotice the matter for hearing on two days’ notice.
Petitioner and respondents are directed to serve upon the intervenor-respondent copies of all papers served in this proceeding, the caption of which shall hereafter include 25 Building Associates as a respondent.