OPINION OF THE COURT
Loren N. Brown, J.
The petitioners pray for a judgment annulling the determination of the Town of Clifton Park Planning Board which granted a special use permit to the Saratoga Association for Retarded Citizens (ARC) to build a proposed school in the town for handicapped and developmentally disabled adults. The United Civic Associations and Neighbors, Inc. (UCAN) is composed of 51 residents and owners of real property in the Town of Clifton Park. It is an amalgam of the following seven civic associations: Clifton Knolls Civic Association, Country Knolls South Civic Association, Rexford Civic Association, Country Knolls West Civic Association, Crescent Estate South Civic Association, Tremont Woods Civic Association. The various associations, generally, represent housing developments throughout the town.
The two individual petitioners reside in close proximity to the proposed project.
The petition is opposed by all respondents and Russell J. Justin, intervenor-respondent, the owner of the land upon which the school would be built.
The proposed project would be located at the intersection of Moe Road of Clifton Park Center Road. Moe Road intersects *908 with Route 146, a four-lane highway at the intersection. Clifton Park Center Road services, among other things, the Clifton Country Mall. The proposed school would adjoin a residential area and a new elementary school.
The proposed project would be situate in a residential district, according to the town’s zoning scheme, which permits as of right such uses as one-family dwellings, farms and greenhouses. A school offering "general education courses” may be established in the zone upon obtaining a special use permit. (Zoning Law § 208-79.)
The history of this litigation starts with an application submitted by ARC for a building permit for the project. The application was denied by the town’s building inspector because, in his judgment, the project was not a school offering "general education courses”. ARC, thereafter, applied to the town’s Planning Board for a special permit. Following a hearing, the Board approved the application. ARC then sought a determination from the town’s Zoning Board of Appeals (ZBA) as to whether the project is a "school” within the meaning of the Zoning Law. The ZBA determined that the project is a "school offering general education courses”. That proceeding was challenged in a companion case, which was dismissed for lack of standing.
Respondent Planning Board and its chairman have now moved for an order pursuant to CPLR 7804 (f) dismissing the petition.
The court will first address the issue of standing raised in opposition to the petition, and in the town’s motion to dismiss.
The broad criteria for determining standing of a neighborhood association may be found in Matter of Douglaston Civic Assn. v Galvin (36 NY2d 1). Citing Justice Hopkins’ concurring opinion from the Appellate Division, the Court of Appeals found the following factors to be relevant — " '(1) the capacity of the organization to assume an adversary position, (2) the size and composition of the organization as reflecting a position fairly representative of the community or interests which it seeks to protect and (3) the adverse effect of the decision sought to be reviewed on the group by the organization as within the zone of interests sought to be protected’ ”. (Supra, at 7, quoting 43 AD2d 739, 740.) To Justice Hopkins’ list, the Court of Appeals added the requirement that "full participating membership in the representative organization be open to all residents and property owners in the relevant neighborhood”. (36 NY2d, at 7.)
*909 Applying these criteria to this case, though the facts available to the court do not permit a full assessment of all criteria, UCAN does not necessarily reflect the community of interests of the residents in the affected area. Nor has it been shown that the adverse decision is within the zone of interest of the group represented by the organization. UCAN is a group of only 51 individuals with residences located throughout the town. The interests of individual members are not necessarily the same as those persons residing in the vicinity of the project, except in the very general sense that the members are interested in the well-being of all the inhabitants of the town. Instead, UCAN has the status of a perhaps well-intended intermeddler (supra, at 8) ready to take up the cudgel for any resident in any part of the town.
Nor should the result differ if one or two members of the 51 members of UCAN live in close proximity to the proposed project. The Court of Appeals decision in Douglaston (supra) made clear that the members of the association or corporation must reside in the immediate vicinity of the disputed project, so that substantially all the members are individually aggrieved. One or two members residing near the project would not establish the corporation’s “ability to undertake an adversary position and to adequately represent the 'aggrieved’ neighborhood members of the organization”. (Supra, at 8.)
Accordingly, the petition is dismissed as to UCAN for lack of standing.
Regarding the standing of the individual petitioners, they may maintain this proceeding. Though their allegations of damage are conclusory, a property owner in close proximity to premises affected by a zoning determination may have standing because an adverse impact may be inferred from that proximity. (Matter of Sun-Brite Car Wash v Board of Zoning & Appeals, 69 NY2d 406.) Mr. Hunter resides .10 miles from the proposed project. Mr. Boynton resides .15 miles from the proposed project. Both reside sufficiently close to the project to claim possible negative impacts, and thus have standing.
Beyond standing, the first ground set forth in the petition attacks the jurisdiction of the Planning Board to overrule the determination of the zoning enforcement officer. This issue is moot. The Zoning Board of Appeals effectively reversed the decision of the zoning enforcement officer when it determined, albeit after the Planning Board’s action, that the school was a school offering “general education courses”. The Planning *910 Board had jurisdiction to review the application for a special use permit and it did so. Assuming that the Planning Board should not have made its own determination prior to the ZBA speaking on the issue, it would serve no useful purpose for this court to remit this litigation to the Planning Board to proceed pursuant to the ZBA’s ruling. The result reached by the Planning Board was based upon the same interpretation of the Zoning Law as that eventually made by the ZBA.
At the heart of this litigation is the petitioners’ next contention, that the proposed use is not a school offering "general education courses” within the meaning of the Zoning Law. No legitimate issue has been presented as to whether the project would be a school. The project meets the definition of a school set forth in Rorie v Woodmere Academy (52 NY2d 200) and similar cases. But does a school for retarded adults offer "general education courses”? There is no definition to be found of the quoted words in the Zoning Law. In the absence of a definition, the petitioner would apply the following principles found in Rohan’s Zoning and Land Use Controls (vol 6, § 36.03 [1] [1992]):
"General principles of statutory construction apply to zoning ordinances. The basic requirement is to give effect to the legislative intent. Thus, the question of construction of a zoning enactment is one of law, and such ordinances must be given valid and constitutional construction where possible.
"The language of an ordinance provides the best guide to its interpretation. It has often been stated that zoning laws should be given a fair and reasonable construction in light of the manifest intention of the legislative body, the objects sought to be attained, the natural import of the words used in common and accepted usage, the setting in which they are employed, and the general structure of the law as a whole. Notwithstanding this rule, there is no occasion to resort to rules of construction where an ordinance clearly expresses its purpose. Indeed, it has been stated that where the language of an ordinance is clear and certain, there is nothing left for interpretation.”
The petitioners would have the use of the words "general education courses” to preclude specialized programs providing remedial treatment services for a handicapped population. Applying the natural meaning to the quoted words, only a school primarily offering education would be permitted. It is urged that the primary purpose of the school would be for *911 therapy, not education. At bottom, if the petitioners’ contentions are accepted, general education would refer to mainstream students.
The petitioners’ interpretation of the Zoning Law’s language is too restrictive. No matter what the primary purpose of the school, the record reflects that traditional, general education courses will be offered. It is of no moment that those taking these courses have other pressing needs, including therapy. The petitioners could not persuasively argue that a school for gifted children, well supplied with state-of-the-art educational tools by a society which highly values their talents, would not be a school offering courses in general education. Of course it would be regarded as such, modified to the needs of the fortunate students attending. Should those less fortunate be treated differently? Clearly, the answer must be "no”. They, too, need a general education, and their educational experience must be tailored to suit their peculiar needs. The therapeutic and educational needs of retarded citizens cannot be neatly distinguished. If their educational needs include concomitant therapy rather than field trips to museums, planetaria and orchestral performances, that fact must be understood and accepted.
Next, the petitioners contend that the Planning Board and the applicant failed to comply with the State Environmental Quality Review Act (ECL art 8 [SEQRA]). Specifically, the applicant submitted an Environmental Assessment Form (EAF), which stated that there was no effect on agricultural land, though agriculture is permitted in the zone, and no effect on the existing transportation systems. On part 2 of the EAF, the answer to question 18 is that the project will have no effect on the neighborhood, an answer disputed by the petitioners. Regarding the Planning Board’s action, it purportedly failed to consider the cumulative environmental impact of all the proposed projects in the area.
Regarding the purported inaccuracies in the EAF, whether there were, in fact, inaccuracies, and whether they were material depends upon the gloss you wish to apply. If they were inaccurate, the defects are insignificant. Though zoned for agriculture, the land has not been used for agriculture for some time, and absent a major demography shift entailing a large scale migration of the populace, that area will not see farming again. A traffic study supplied to the Planning Board by ARC found no significant impact on traffic. In light of that report, the applicant’s statement that there would be no effect *912 on existing transportation is supportable. Finally, the area surrounding the proposed school was at one time either residential or farmland. The inexorable pattern of growth in the area has stripped the area of its former character. It is an area containing both residences and commerce. Under the circumstances, the statement that the project would not affect the character of the existing neighborhood is also supportable.
Regarding the Planning Board’s compliance with SEQRA, the Board was required to identify the relevant areas of environmental concern, take a "hard look” at those concerns, and make a reasoned elaboration of the basis for the action taken. (Matter of Save the Pine Bush v City of Albany, 117 AD2d 267.) If it did so, the court will not disturb its determination. The court has reviewed the findings of the Planning Board, dated December 17, 1991, and has found them to be wide-ranging and well reasoned. Specifically, the Board had reviewed the traffic study, and found that "[vjehicular traffic, while increased by the particular use, will have peak use period at times other than normal peak uses in the area, since the facility will operate on school hours basis”. Rightly treating the facility as a school, it found that the new facility would not adversely impact the surrounding properties. Though the cumulative impact of this and other projects was not specifically addressed, implicitly it was by a finding of a lack of impact from the school. Clearly, SEQRA was satisfied.
The court has examined the petitioners’ remaining contentions and finds them to be without merit. The action of the Planning Board was not arbitrary and capricious or contrary to law. The petition is dismissed.