OPINION OF THE COURT
Carol H. Arber, J.
This is an action commenced pursuant to CPLR article 78, by the petitioners Inner City Press/Community on the Move, Inc. (ICP) and Matthew Lee, the Executive Director of ICP, and Fritz Jean Jacques, a member of ICP.
Petitioners, on behalf of their members, seek to challenge a determination made by the New York City Department of Housing Preservation and Development (HPD), the City Council, and the Mayor (the Municipal Respondents) pursuant to New York State’s Urban Development Action Area Act (UDAAA), General Municipal Law §§ 690-698, and the City’s Vacant Buildings Program to award a Land Disposition Agreement for four City-owned buildings in the South Bronx (Bronx Site 11A) to Croton(a) Housing Associates (CHA).
The Municipal Respondents move to dismiss on the basis that the petitioners lack standing to prosecute this article 78 proceeding and that this proceeding is jurisdictionally defective in that it was commenced before all administrative remedies were exhausted. ICP opposes the motion and moves pursuant to CPLR 7805 for a stay and to restrain the City from transferring Bronx Site 11A to CHA while this article 78 proceeding is still pending.
Inner City Press/Community on the Move, Inc. is a domestic corporation incorporated under the State of New York’s Not-For-Profit Corporation Law. ICP estimates that it has over 1,000 members residing throughout the City, although it concedes that the majority of its members reside in the South Bronx and Upper Manhattan (e.g., Washington Heights). ICP’s certificate of incorporation provides that one of its purposes is to combat community deterioration in economically distressed neighborhoods of New York City. ICP’s certificate of incorporation provides that ICP’s purpose is to "assist and foster the rebuilding and preservation of deteriorating neighborhoods of New York City” and assist individuals in their efforts "to locate, purchase and restore to habitable condition abandoned *829 residential buildings” and to "[e]ncourage and assist participation by such individuals and families in the planning of housing, economic development, and community development programs.”
In order to initiate an article 78 proceeding a petitioner need only have some cognizable injury and be within the zone of interest of the statute allegedly violated to have standing. (See, Matter of Dairylea Coop. v Walkley, 38 NY2d 6, 9 [1975]; see also, Society of Plastic Indus. v County of Suffolk, 77 NY2d 761, 772-774 [1991]; Matter of Sun-Brite Car Wash v Board of Zoning & Appeals, 69 NY2d 406, 412 [1987]; Matter of Dental Socy. v Carey, 61 NY2d 330, 334 [1984]; Matter of Douglaston Civic Assn. v Galvin, 36 NY2d 1, 6-7 [1974].)
Before a representative association, such as ICP, may initiate an article 78 proceeding on behalf of its members it must satisfy the court "that the organization before it is an appropriate one to act as the representative of the group whose rights it is asserting.” (Matter of Douglaston Civic Assn. v Galvin, 36 NY2d, at 7, supra.) In Society of Plastics Indus. (77 NY2d, at 775, supra) the Court set forth a three-pronged test to determine associational standing: (1) one or more members of association must have standing to sue; (2) the association’s asserted interests must be germane to its purpose; and (3) neither the asserted claim nor the appropriate relief requires participation of individual members.
In order to have standing, ICP must demonstrate that the interests it asserts on behalf of its members "fall[ ] within the 'zone of interests,’ or concerns, sought to be promoted or protected by the statutory provision under which the agency has acted.” (Society of Plastics Indus. v County of Suffolk, 77 NY2d, at 773, supra [citations omitted].)
New York State’s UDAAA and the applicable City laws, rules and procedures provide for adding to the limited supply of low- and moderate-income housing by authorizing the City, after allowing for full and proper public participation, to transfer City-owned abandoned buildings to developers who have agreed to rehabilitate these properties and provide affordable housing for low- and moderate-income families.
In particular, UDAAA, the City Charter, the rules of the City Council applicable to land transfers, and the Request For Proposals used in soliciting bids under the City’s Vacant Buildings Program provide and define the zone of interests for those individuals who are either affected or who choose to parti *830 cipate in the City’s proposed sale of abandoned City-owned property. The purpose of the City’s Vacant Buildings Program, as expressed in the Requests For Proposals, is "to solicit proposals for rehabilitation and ownership of vacant, City-owned buildings to create new housing for low-and moderate-income and homeless New Yorkers” and "to create a larger proportion of units for low-income residents, and to reserve a portion of the units for homeless residents.”
Many members of ICP are currently residing in the neighborhood encompassing Bronx Site 11 A. According to affidavits submitted in support of this article 78 proceeding, ICP members are in need of affordable housing for themselves and their family members. They assert that they have a vital interest in ensuring that the City transfers City-owned vacant buildings in a manner that is in accord with the requirements of UDAAA and the Vacant Buildings Program in order to maximize the supply of affordable housing which will be available in the South Bronx.
The issue of standing in a land use matter is resolved when an organization establishes that its members "would suffer direct harm, injury that is in some way different from that of the public at large.” (Society of Plastics Indus. v County of Suffolk, 77 NY2d, at 774, supra [citations omitted].) In particular, such injury or harm must directly relate to the interest or concerns sought to be promoted or protected by the statutory provisions under which the agency is authorized to act. (Society of Plastics Indus. v County of Suffolk, 77 NY2d, at 773, supra.)
Jose Palacio, an ICP member who resides at 1439 Prospect Avenue in the South Bronx, states in his affidavit: "I live less than 50 yards from [670 and 675 East 170th Street] * * * Given the poor record of the people behind [CHA] in maintaining and managing their residential buildings I fear that these buildings may end up in even worse condition than they are now. If the government sells the buildings right next to me this type of absentee landlord, it will effect my neighborhood, my block my building, and thus my families and our future.”
ICP argues that the City has not followed the prerequisites of the Request For Proposals in making a transfer of Bronx Site 11A to CHA in contravention of the requirements set forth in the legislation. The failure to follow the legislation means that low-income and homeless families in the South Bronx will lose a number of units of publicly financed afforda *831 ble housing in their neighborhood that might be available to them if a bidder had been properly selected by HPD.
ICP also contends that there are substantial numbers of outstanding Housing Maintenance Code violations, tax arrearages and bank foreclosure actions involving buildings owned or operated by the principals of CHA. Based on prior performance of CHA, low- and moderate-income residents of the South Bronx, who are potential residents of the building comprising Bronx Site 11A, face the real possibility that the housing provided for them by CHA at great public expense will in the end be neither affordable nor decent. Indeed, just such concerns are included in the selection criteria described in the Request For Proposals. Those criteria disqualify applicants with extensive Housing Maintenance Code violations and tax arrearages from consideration as a bidder under the City’s Vacant Buildings Program.
ICP has demonstrated that the purposes of their organization and their interests as evidenced by their certificate of incorporation and as expressed by their members in the affidavits they have submitted, fall within the zone of interests defined by UDAAA and the applicable City laws, rules and procedures.
The issue as to whether individual members of ICP have standing to bring this action must be resolved in favor of petitioners because their interests fall within the zone of interests defined by the UDAAA and the applicable City laws, rules and procedures. Those interests and concerns will be harmed if the City is permitted to transfer Bronx Site 11A to CHA in violation of those provisions. It is also clear that ICP’s asserted interest in causing a legal challenge to the administrative determination involved here as to low and moderate income is germane to petitioners’ organizational purpose of promoting the goals of the legislation.
The New York Court of Appeals has long recognized that it is a "modern day fact of life that participation by neighborhood groups in land use decisions has grown from the exception to the rule. While often informal and disorganized, it is a practice that needs to be encouraged lest a neighborhood become 'nickel-and-dimed’ to death.” (Matter of Douglaston Civic Assn. v Galvin, 36 NY2d, at 8, supra [citation omitted]; see also, e.g., Matter of Ecumenical Task Force v Love Canal Area Revitalization Agency, 179 AD2d 261, 265.)
The Municipal Respondents argue that the petitioners’ fail *832 ure to exhaust their administrative remedies precludes resort to an article 78 proceeding. Since respondents fail to set forth what administrative remedies petitioners could have pursued, this argument clearly lacks merit.
Based on the above discussion Municipal Respondents’ motion to dismiss this article 78 proceeding is denied.