OPINION OF THE COURT
Beatrice Shainswit, J.
I. Relief Requested
This is a CPLR article 78 proceeding brought by petitioners, Inner-City Press / Community on the Move (ICP) and its executive director, Matthew Lee, and on behalf of its affiliates, pursuant to CPLR 7803 et seq., to vacate the order of respondents, the New York State Banking Board and the New York State Banking Department, approving: (a) the merger of the Chemical Bank Corporation and the Chase Manhattan Corporation (collectively the Holding Companies), and the merger of their subsidiaries, Chemical Bank and Chase Manhattan Bank, N.A. (collectively the Banks); and (b) the acquisition by North Fork Bancorporation, Inc., of Extebank, and the merger of Extebank into its subsidiary, North Fork Bank.
Respondents, the New York State Banking Board (NYSBB) and the New York State Banking Department (NYSBD) (collectively the Banking Board), cross-move, pursuant to CPLR 3211 (a) (7) and 7804 (f), to dismiss the petition on the grounds that (a) petitioners lack standing to maintain this proceeding, and (b) respondents’ actions were not arbitrary, capricious, or an abuse of discretion. This court granted permission to the Holding Companies, the Banks, and North Fork to intervene in this proceeding. They also oppose the petition.
II. Statement of Facts
Petitioner Inner-City Press / Community on the Move is a nonprofit corporation, headquartered in the South Bronx, *687 which serves as an advocate for the residents of various low-income, predominantly minority, neighborhoods. Respondents are the government agencies charged with, among other things, ensuring compliance with relevant New York State banking laws in approving or denying proposed bank merger applications.
The instant proceeding arises out of petitioners’ objection to the Banking Board’s approval of the merger of the Holding Companies and the Banks (hereinafter the Chemical-Chase merger) and the merger of North Fork and Extebank (hereinafter the North Fork-Extebank merger) at its regularly scheduled January 11, 1996 public meeting, and the Banking Board’s subsequent ratification of its approval at its February 1, 1996 public meeting. Petitioners contend that the Banking Board’s approval of both transactions was affected by errors of law, and was arbitrary, capricious, and an abuse of discretion.
In the fall of 1995, the Chemical Bank Corporation filed an application with the New York State Banking Board seeking approval for a proposed merger with the Chase Manhattan Corporation, and then for a merger between its subsidiaries, Chemical Bank and the Chase Manhattan Bank, N.A. On October 30, 1995, New York State Banking Board Superintendent, Neil Levin, announced that a joint public meeting would be held with the Board of Governors of the Federal Reserve System to discuss Chemical’s application. At the meeting, petitioners submitted substantial oral and written comments opposing Chemical’s application. North Fork Bancorporation likewise submitted an application to the Banking Board seeking approval for the proposed acquisition of Extebank, and then for the proposed merger of Extebank into its subsidiary, North Fork Bank. Petitioners submitted adverse comments opposing the North Fork-Extebank merger as well. The Superintendent scheduled a vote on the Chemical-Chase and the North Fork-Extebank applications for January 11, 1996 at the Banking Board’s regularly scheduled meeting.
On January 11, 1996, prior to the commencement of the public session, the NYSBB entered into a closed executive session to discuss various issues, including the North Fork-Extebank merger. No formal action was taken at the executive session. The Banking Board thereafter opened the meeting to the public.
Deputy Superintendent of the Commercial Banks Division, Peter M. Philbin, presented the findings and recommendations of the NYSBD concerning the Chemical-Chase merger as fol *688 lows: The Chemical Banking Corporation and Chemical Bank would be the surviving institutions, but would retain the Chase name, and Chemical had $171 billion in assets while Chase had $114 billion in assets.
The Economic Research Division had evaluated the competitive impact of the merger between Chemical and Chase, and found no significant antitrust concerns.
Thus, Deputy Philbin concluded that, based on the Banking Board’s analyses, a merger would result in a financially sound institution, the merger would not have a significantly adverse impact on competition, and the Community Reinvestment Act (CRA) performances of both banks warranted approval.
The Banking Board thereafter unanimously voted to approve the Chemical-Chase application.
Deputy Superintendent Philbin also summarized the details of the North Fork-Extebank transaction.
The Economic Research Division found that the proposed merger would not have a significant effect on competition or banking concentration, but rather would give Extebank customers access to a greater array of financial products.
While the Banking Board had, Philbin noted, carefully reviewed a community group’s protest to the proposed North Fork-Extebank merger, it nevertheless found that the merger should be approved. Deputy Philbin concluded that the North Fork-Extebank application presented no safety and soundness concerns.
Following this presentation, the Banking Board unanimously voted to approve North Fork Bancorporation’s acquisition of Extebank, and the merger of Extebank into North Fork Bank.
On January 19, 1996, petitioners filed this article 78 proceeding, alleging that the January 11, 1996 closed executive session violated New York’s Open Meetings Law (Public Officers Law §§ 100-111) and, accordingly, that any action taken there was null and void. The Banking Board, although denying that its closed executive session had violated the Open Meetings Law, rescheduled discussion of the Chemical-Chase merger and the North Fork-Extebank merger applications for the Banking Board’s next public meeting on February 1, 1996. All parties were duly notified.
At the February 1, 1996 public meeting, Superintendent Neil Levin announced that a portion of the meeting would be devoted to the Chemical-Chase and North Fork-Extebank merger applications, to describe fully and in public what oc *689 curred in the closed executive session of the January 11, 1996 meeting, and to present additional substantive information bearing on the proposed mergers.
(A) As to Chemical-Chase:
(a) Deputy Superintendent Philbin presented an analysis of the financial safety and soundness of the merged entity, and recommended approval.
(b) Dr. Cathy Weintraub, the Director of the Economic Research Division of the Banking Board, presented the results of her competitive analysis.
She applied the Herfindahl-Hirschman Index (HHI), an index developed by the Department of Justice and relied on by the Department to determine the existence of anticompetitive concerns, to measure the degree of concentration in the product market. She concluded that the merger did not violate Department of Justice guidelines.
Due to petitioners’ concerns, however, she examined specifically whether an improper concentration in Bronx County existed. She reported that Bronx County’s HHI was considered to be a "highly concentrated” market under Department of Justice guidelines. The Economic Research Division therefore extended its analysis to the specific product market of small business lending. Dr. Weintraub explained that her division chose to focus on small business lending because of protesters’ comments and the Justice Department’s recent focus on the impact of bank mergers on small business lending. It was found that Bronx County’s small business lending HHI fell within acceptable parameters.
Dr. Weintraub therefore concluded that no significant adverse effect on competition or on the concentration of resources in any relevant banking market would result from the Chemical-Chase merger. She recommended that the Chemical-Chase application be approved.
(c) Acting Deputy Superintendent Peter Zanko* reported on the results of the evaluation by the Consumer Services Division and the Community Reinvestment Monitoring Unit of the impact of the Chemical-Chase merger on community interests and needs.
Deputy Zanko also recommended that the Chemical-Chase merger be approved.
*690 (d) Following these presentations, Superintendent Levin called for a motion to ratify the Banking Board’s January 11, 1996 resolution approving the Chemical-Chase merger, and to incorporate by reference the minutes of the January meeting. The Banking Board agreed to accept the Superintendent’s recommendation, and the resolution was unanimously adopted.
B. As to North Fork:
(a) Deputy Philbin reviewed the financial factors underlying North Fork’s application, and concluded that the proposed North Fork-Extebank merger presented no safety and soundness concerns.
(b) Dr. Weintraub then presented the Banking Board with her findings concerning the competitive and market concentration issues of the proposed merger, and concluded that the North Fork-Extebank merger would not have a significant adverse impact on competition or banking concentration in any relevant banking market. She accordingly recommended approval of the merger.
(c) Acting Deputy Superintendent for the Community Reinvestment Monitoring Unit of the Consumer Services Division, Stacey Cooper, next discussed the substance of her presentation made in the closed executive session of the January 11, 1996 meeting. Acting Deputy Cooper reported that her recommendation took into account petitioners’ objections, including those concerning the bank’s delineated service areas. She found North Fork’s delineation to be consistent with Federal regulations.
(d) Acting Deputy Zanko then reviewed North ForkExtebank’s CRA performance. The review included an analysis of Home Mortgage Disclosure Act (HMDA) data, responses to the Department’s Annual Information Request, comments submitted by protesters ICP, the institution’s responses thereto, prior CRA assessments, and discussions held with North Fork senior management.
ICP had protested North Fork’s application on a number of grounds, including allegations of an improperly delineated service area, inadequate lending in low- to moderate-income areas, and discriminatory lending. In response, the NYSBD reviewed North Fork’s delineated service area, and determined that the bank’s delineation was consistent with Federal regulations.
Finally, petitioners had alleged that North Fork adopted the discriminatory lending practices said to be occurring at an un *691 related thrift institution owned by a North Fork shareholder. Based upon representations that the individual in question "is neither an officer or director and has no capacity to direct, implement or influence North Fork lending activity”, the Consumer Services Division determined that these allegations did not warrant denial of the application. On this entire record, Acting Deputy Zanko recommended approval of the North Fork-Extebank application.
Following these presentations, Superintendent Levin called for a motion to ratify the Banking Board’s January 11, 1996 resolution concerning the North Fork-Extebank merger, and to incorporate by reference the minutes of the January meeting. The Banking Board agreed to accept the Superintendent’s recommendation, and the resolution was unanimously adopted.
III. Discussion
A. Standing
The standing of a party to seek judicial review of a particular claim or controversy is a threshold matter that must be resolved by the court before the merits of the application are reached (Society of Plastics Indus, v County of Suffolk, 77 NY2d 761 [1991]; Matter of New York State Nurses Assn. v Axelrod, 152 AD2d 888 [3d Dept 1989]). A party has standing to contest an administrative determination if he or she will in fact be injured by the decision and if the injury falls within the "zone of interest” that the pertinent statute aims to protect or promote (Society of Plastics Indus. v County of Suffolk, supra, 77 NY2d, at 772-773; Matter of Dairylea Coop. v Walkley, 38 NY2d 6 [1975]). "Standing depends on the possibility of injury, and consequently on a legally cognizable interest the violation of which would constitute injury” (Matter of Lee v New York City Dept. of Hous. Preservation & Dev., 212 AD2d 453, 455 [1st Dept 1995]).
Before a representative association, such as petitioners, may bring an article 78 proceeding on behalf of its members, it must satisfy the court that "the organization before it is an appropriate one to act as the representative of the group whose rights it is asserting” (Matter of Douglaston Civic Assn. v Galvin, 36 NY2d 1, 7 [1974]). This is demonstrated if it is shown that (a) one or more of its members have standing to sue; (b) the association’s asserted interests are germane to its purposes so as to satisfy the court that it is an appropriate representative of those interests; and (c) neither the asserted claim nor *692 the appropriate relief requires the participation of individual members (Society of Plastics Indus. v County of Suffolk, supra, 77 NY2d, at 775).
The Banking Board contends that petitioners lack standing to bring this proceeding because (a) they do not allege how they could or would be injured by the proposed mergers, e.g., that they are Chemical, Chase, and North Fork customers, and that they applied for and or had been denied credit at any of these banks; (b) they do not allege that they fall within the "zone of interest” extended by Banking Law §§ 142 and 28-b; and (c) they are not an appropriate organization to represent the interests of low- to moderate-income, predominantly minority neighborhoods.
(a) Petitioner Inner-City Press meets test (a) above. It is a nonprofit corporation headquartered in the South Bronx, representing and advocating on behalf of residents in various low-income, predominantly minority, neighborhoods; petitioner Matthew Lee is the Executive Director of Inner-City Press. Inner-City Press has alleged direct potential injury from the proposed mergers, as some of its members and affiliate organizations maintain bank accounts with Chemical, Chase and North Fork. Petitioners assert that since the new Chase intends to close 100 of its current branches, and since seven of those branch closures will be in low- to moderate-income neighborhoods such as the South Bronx, Inner-City Press and its members will suffer more difficult access to funds, banking services, and access to credit.
(b) Petitioners also fall within the "zone of interest” of Banking Law §§ 142 and 28-b. Section 142 (1) sets forth certain criteria that the Banking Board must consider in determining whether or not to approve a merger application, including, "whether such formation, merger, consolidation or acquisition may result in such a lessening of competition as to be injurious to the interest of the public or tend toward monopoly, and * * * primarily, the public interest and the needs and convenience thereof.” (Emphasis supplied.) Section 28-b (3) (a) provides that the Banking Board shall take into account the record of performance of the banking institution in meeting the credit needs of its entire community, including low- and moderate-income neighborhoods, consistent with safe and sound operation of the banking institution.
Petitioners allege that ICP affiliate Inner City Community Development Loan Fund will suffer direct antitrust injury from the Chemical-Chase merger. Petitioners also assert that Chemi *693 cal and Chase, in particular, engage in illegal credit and discriminatory practices; and that the proposed mergers will adversely affect the residents of these low- to moderate-income neighborhoods, in that Chemical, Chase, and North Fork all have inadequate records in meeting the credit needs of its community.
In view of these allegations and the explicit statutory language of Banking Law §§ 142 and 28-b, the court finds that petitioners have legally cognizable interests that are encompassed by such statutes, in that, if the allegations are true, they may face anticompetitive injuries through decreased access to banking services and credit.
(c) Petitioners also are the appropriate organization to represent the interests of low- to moderate-income, predominantly minority neighborhoods. ICP publishes a periodical, Inner City Press/La Prensa del Pueblo, which informs residents of the Bronx and other communities about issues of import to their community. For all of these reasons, petitioners have standing to maintain this action.
B. New York’s Alleged Open Meetings Law Violations
New York’s Open Meetings Law is embodied in Public Officers Law §§ 100-111.
Petitioners assert that the Banking Board’s closed executive session, entered into prior to the regular January 11, 1996 public meeting, violated the Open Meetings Law and, therefore, any action taken therein is void.
Courts are empowered, upon good cause shown, to declare void any action taken by a public body in violation of the Open Meetings Law (Matter of Roberts v Town Bd., 207 AD2d 404 [2d Dept 1994]). However, it is well settled that not every breach of the Open Meetings Law automatically triggers its enforcement sanctions (Matter of New York Univ. v Whalen, 46 NY2d 734 [1978]; see also, Matter of Malone Parachute Club v Town of Malone, 197 AD2d 120 [3d Dept 1994]). A demonstration of prejudice from the Open Meetings Law violation, for example, is required to constitute the requisite good cause to declare the action void (Town of Moriah v Cole-Layer-Trumble Co., 200 AD2d 879 [3d Dept 1994]).
The Banking Board does not contend that the closed executive session, held immediately prior to the public session of January 11, 1996, was properly convened. However, not every breach of the Open Meetings Law warrants voiding of the ille *694 gal action. Here, there was no formal action taken at the executive session. In light of these facts, and the failure of petitioners to show prejudice flowing from the illegal closed executive session, the court declines to declare such session void.
C. The Banking Board’s Approval
1. Standard of Review
A court in an article 78 proceeding may not substitute its judgment for that of the administrative agency. The scope of judicial review of an administrative agency’s ruling is limited to determining whether there was a rational basis for the administrative action (Matter of Pell v Board of Educ., 34 NY2d 222 [1974]). Thus, the mere fact that petitioners may have reached a different conclusion does not mean that the agency’s decision was arbitrary and capricious (see, e.g., Matter of County of Westchester v Power Auth., 188 AD2d 432 [1st Dept 1992]).
2. The Chemical-Chase Merger
Petitioners contend that the Banking Board’s approval of the Chemical-Chase merger was based on a flawed analysis by the Economic Research Division in that it failed to use a narrower definition of product market — i.e., small business products and services — and failed to apply it to a smaller geographic market, i.e., Bronx County. Instead, Dr. Weintraub used the "cluster of products and services” approach, and applied it to the New York-New Jersey metropolitan banking market.
The record, however, indicates that the Banking Board’s Economic Research Division thoroughly considered the anti-competitive effects of the proposed merger.
Respondents’ decision to use the New York-New Jersey metropolitan banking market and the traditional "cluster of products and services” approach fell squarely within the scope of its authority and, therefore, was not arbitrary or capricious.
While petitioners may fault the Banking Board’s methodology and analysis, and disagree with the conclusions reached by the Banking Board as a result of its analysis, the Banking Board’s approval was based on specific reasons arising from its evaluation of the proposed merger. Accordingly, the court must uphold the respondent administrative agency’s determination.
3. The North Fork-Extebank Merger
Petitioners also contend that the Banking Board’s approval of the North Fork-Extebank merger was arbitrary and capri *695 cious. Petitioners allege that while North Fork Bank lends more in the Bronx, Westchester, and Nassau Counties, it arbitrarily excludes the Bronx on its community reinvestment service and assessment areas.
Petitioners’ contentions that North Fork’s application should be denied because of redlining, improper delineation, discrimination in lending, inadequate lending in low- to middle-income communities and violation of fair lending laws are without merit, as these concerns were considered by the Banking Board before reaching its decision to approve the acquisition and merger.
Again, while petitioners may disagree with the Banking Board’s CRA analysis of the North Fork-Extebank merger, the respondents’ determination approving the proposed merger was rationally based.
4. Technical Violations of Banking Law § 142
Petitioners next contend that the Superintendent violated Banking Law § 142 (1) by failing to submit "all papers, correspondence and other information”, including crucial adverse information, relating to the Chemical-Chase and North ForkExtebank mergers, for the Banking Board’s consideration, prior to the January 11, 1996 and the February 1, 1996 public meetings. Petitioners state that each Board member only had before him or her a one-inch thick black binder, which could not have contained all papers, correspondence and information, including crucial adverse information”, relating to the Chemical-Chase and North Fork applications, as required by statute. Further, petitioners argue the Banking Board violated Banking Law § 142 (1) by failing to reduce its findings to a formal order delineating the reasons for its approval of both applications.
 The court finds that as a practical matter, the Banking Board members had full access to all the papers, correspondence and related information concerning the Chemical-Chase and North Fork-Extebank mergers. Further, the court finds that the detailed minutes of the February 1, 1996 public meeting were in fact incorporated into the Banking Board’s resolution approving the Chemical-Chase and North Fork-Extebank mergers, and did in fact encompass the Banking Board’s reasons for its approvals of both transactions. Therefore, respondents have complied, in substance, with the requirements under Banking Law § 142.
*696 IV. Conclusion
For all of the foregoing reasons, petitioners’ article 78 petition is denied and the action is dismissed.

 Peter Zanko is currently Deputy Superintendent of the Mortgage Banking Division.